**In re HAYES LEMMERZ INTERNATIONAL, INC., et al., Debtors.**

**HLI Creditor Trust, Plaintiff,**

**v.**

**Export Corp., Defendant.**

**Bankruptcy No. 01–11490MFW.**

**Adversary No. 03–57443.**

United States Bankruptcy Court, D. Delaware.

July 27, 2004.

---

Michael W. Yurkewicz, Klehr Harrison Harvey Branzburg & Ellers, Philadelphia, PA, Skadden Arps Slate Meagher & Flom, Wilmington, DE, Anthony W. Clark, Mark S. Chehi, Skadden Arps Slate Meagher & Flom, Chad Joseph Toms, Saul Ewing LLP, Michele C. Gott, Smith, Katzenstein, & Furlow LLP, Teresa K.D. Currier, Klett Rooney Lieber & Schorling, Thomas G. Macauley, Zuckerman and Spaeder LLP, Wilmington, DE, Grenville R. Day, Skadden Arps Slate Meagher & Flom LLP, New York, NY, Robert Wardrop II, Grand Rapids, MI, for Debtors.

Brian A. Sullivan, Werb & Sullivan, Robert K. Beste, Jr., Cohen Seglias Pallas

Greenhall & Furman, Wilmington, DE, for Defendant.

## *MEMORANDUM OPINION*[1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Motion of Export Corporation ("Export") to Dismiss with prejudice the preference Complaint filed by HLI Creditor Trust ("the Plaintiff") for failure to state a claim upon which relief may be granted. The Motion is opposed by the Plaintiff. After considering the arguments of both parties, the Motion to Dismiss will be denied for the reasons set forth below.

## I. *BACKGROUND*

On December 5, 2001 ("the Petition Date"), Hayes Lemmerz International, Inc., and several of its affiliates ("the Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Prior to the filings, the Debtors manufactured and sold wheel and brake components for commercial vehicles. Export was a warehouseman, storing quantities of the Debtors' products and, on the Debtors' instructions, delivering them "just-in-time" to the Debtors' customers.

Contemporaneous with filing their chapter 11 petitions, the Debtors also filed a motion seeking authority to pay, inter alia, certain pre-petition shipping and warehouse charges in order to assure continued services by critical vendors ("the Critical Vendor Motion"). An order was entered on December 6, 2001, granting that motion ("the Critical Vendor Order").

The Debtors' Modified First Amended Joint Plan of Reorganization was confirmed on May 12, 2003. The Plaintiff was created under the Plan and was vested with the power to prosecute avoidance actions on behalf of the Debtors' estates.

On November 3, 2003, the Plaintiff filed the instant Complaint against Export seeking to recover certain alleged preferential transfers received from the Debtors between September 10 and November 14, 2001, totaling $286,385.66. On January 12, 2004, Export filed the Motion to Dismiss the Complaint with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] The Plaintiff opposes the Motion.

The Motion has been fully briefed, and the matter is ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (F) & (O).

## III. *DISCUSSION*

### A. *Standard for Motion to Dismiss*

A court may dismiss a complaint only if the movant establishes "beyond doubt that the plaintiff can prove no set of facts" upon which it would be entitled to the relief requested. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *See also Hishon v. King & Spalding*, 467 U.S. 69, 81, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In making its determination, a court is required to "accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the plaintiff." *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d Cir.2001). *See also Bo-*

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. Bankruptcy Rule 7012(b) incorporates by reference Rules 12(b)-(h).

*gosian v. Gulf Oil Corp.*, 561 F.2d 434, 462 (3d Cir.1977).

### 1. *Section 547(b)(5)*

Export argues that the Complaint should be dismissed because the Plaintiff cannot prove that the pre-petition transfers at issue are greater than what Export would have received under a chapter 7 liquidation. 11 U.S.C. § 547(b)(5)(A). However, we cannot dismiss the Complaint on this basis for two reasons.

First, if at trial the Plaintiff presents evidence showing that Export would have recovered less than $286.385.66 from the Debtors' estates, it could satisfy the requirements of section 547(b)(5)(A). Thus, there may exist facts that, if proved, would entitle the Plaintiff to the relief it seeks.

■■■ Second, Rule 8(a)[3] of the Federal Rules of Civil Procedure does not require that a plaintiff prove its allegations in the complaint, rather it demands only a short, plain statement of the claim "that give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Posman v. Bankers Trust Co.*, Adv. No. A–97–245, 1999 WL 33742299, *2 (Bankr.D.Del. July 28, 1999) (quoting *Conley* 355 U.S. at 47, 78 S.Ct. 99). In the *Posman* case, the Court outlined what must be included in a preference complaint to survive a motion to dismiss. The complaint must include: (a) an identification of the nature and amount of each antecedent debt, and (b) an identification of each alleged preference transfer by (I) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer. *Posman*, 1999 WL 33742299, at *2. *See also Valley Media, Inc. v. Borders, Inc., (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr.D.Del.2003).

■■■ The Complaint in this case complies substantially with this requirement: Exhibit A, a vendor report, identifies Export as the relevant creditor, and shows the dates and amounts of each debt incurred by the Debtors, together with the date, amount, check number and clear date for each related payment made to Export. Thus, the Complaint satisfies the pleading requirements of Rule 8(a).

Therefore, we conclude that the Plaintiff may be able to prove that the allegedly preferential payments to Export total more than the latter would have received under a chapter 7 liquidation. Further, the Complaint satisfies the pleading requirements of Rule 8(a). Consequently, dismissal of the Complaint is not warranted at this juncture.

### 2. *Critical Vendor Order*

Export asserts that the Complaint should be dismissed because the pre-petition payments it received from the Debtors during the preference period are protected under the Critical Vendor Order. It reasons that, by virtue of the Critical Vendor Order and the enabling Motion, this Court determined that it was a critical warehouseman entitled to receive full payment of all pre-petition amounts in exchange for agreeing to service the Debtors post-petition on pre-petition terms. Export suggests that the Critical Vendor Order is the law of the case and, thus, is binding upon this Court. Therefore, since the Debtors did pay it post-petition for pre-petition obligations owed, Export contends that the Plaintiff is estopped from denying now that the company had critical vendor status and was entitled to full payment of all pre-petition obligations it was owed.

**3.** Bankruptcy Rule 7008(a) incorporates by reference Rule 8.

The Plaintiff maintains that the Motion to Dismiss should be denied because the Critical Vendor Order did not provide a blanket waiver of the Debtors' preference claims against any vendor, including Export. The Plaintiffs argue that the confirmed Plan of Reorganization—which is binding on, among others, the Debtors and all of their creditors—specifically assigned to the Plaintiff the preference claims against Export it now asserts. Furthermore, the Plaintiff does not admit that the Debtors paid Export under the Critical Vendor Order. However, the Plaintiff does contend that, even if they did, it would be irrelevant because that Order was permissive—rather than mandatory. That is, the Debtors were not obligated by the Critical Vendor Order to pay Export post-petition for all the pre-petition charges owed. Consequently, the Plaintiff asserts that Export cannot now claim that—but for having received transfers during the preference period—it would have been paid pursuant to the Critical Vendor Order.

 We agree with the Plaintiff's argument. First, the payments at issue here were *not* made under the Critical Vendor Order; rather, they were made *before* the Critical Vendor Motion was filed and *before* the Critical Vendor Order was entered. Therefore, the payments at issue are not protected by the Order.[4]

Second, the Plaintiff does not concede that the Debtors made any payments to Export under the Critical Vendor Order. Neither the enabling Motion nor the Order identifies Export as a critical vendor. In fact, the Critical Vendor Motion itself appears to contradict Export's claim that it was covered by that Order; it states that the Debtors "do not believe that they have any outstanding liability for Warehousing Obligations as of the Petition Date." (Critical Vendor Motion at ¶ 35.) Therefore, there exists a factual dispute between the parties on this point. Ascertaining the truth requires an evidentiary finding—an undertaking improper at the current pleading stage.

 Third, even if Export had received some payments under the Critical Vendor Order, it does not follow that it was entitled to receive payment of all pre-petition claims. The Order was permissive, not mandatory. The Order provides, in relevant part:

> [T]he Debtor hereby is, *authorized, but not directed,* to make payments in an amount not to exceed $1.6 million with respect to Shipping Charges, Warehousing Obligations, Import Obligations and related possessory liens that the Debtors determine, in the exercise of their business judgment, are necessary or appropriate to obtain release of the Goods ... and to satisfy the liens, if any, in favor of Shippers, Warehousemen, Distributors, or others in respect of such Goods.

(Critical Vendor Order at ¶ 2 (emphasis added).)

While Export is correct in stating that the Critical Vendor Order is the law of the case[5], this does nothing to support its Motion to Dismiss. As noted previously, the Critical Vendor Order did *not* identify Export as a critical vendor, did not *require* that Export's pre-petition claims be paid in

---

4. Under section 549, payments made post-petition may be recovered unless they were authorized by a court order. 11 U.S.C. § 549(a)(2)(B).

5. The law of the case doctrine states that "once an issue has been decided, parties may not relitigate that issue in the same case." *Ogbudimkpa v. Ashcroft,* 342 F.3d 207, 210 n. 7 (3d Cir.2003) (quoting *Waldorf v. Shuta,* 142 F.3d 601, 616 n. 4 (3d Cir.1998)).

full, and did not provide that any preferential payments *previously* made to Export could not be recovered. In fact, in granting the Critical Vendor Motion, there was no consideration or analysis of whether any potential critical vendor had received a preference.

Nevertheless, Export cites *Official Committee of Unsecured Creditors v. Medical Mutual of Ohio (In re Primary Health Systems, Inc.)*, 275 B.R. 709, 712 (Bankr. D.Del.2002), *aff'd*, C.A. No. 02–301 (D.Del. Feb. 27, 2003), in support of its position. In *Medical Mutual*, the Court did conclude that a creditor who received post-petition payment of pre-petition obligations under a Critical Vendor Order was protected from a preference challenge. We respectfully decline to follow that holding.

■ If the *Medical Mutual* decision were correct, then the court would have to make a preference analysis of all potential critical vendors at the outset of a case. In fact, no such analysis is ever made that early in the case. In granting permission to pay certain discreet pre-petition payments after the bankruptcy filing to keep the debtor's business operating, the court is *not* granting a complete waiver of any preference actions.[6] Thus, the issue of recovery of the preference payment to Export was not previously litigated and determined by the Critical Vendor Order.

Finally, Export appears to argue by analogy those cases which bar preference actions where an executory contract has been assumed. *See e.g., In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir.1996) (assumption order "divests the trustee of subsequent claims to monies paid under the contract whether they were paid prepetition or postpetition"); *Seidle v. GATX Leasing Corp.* 778 F.2d 659, 666 (11th Cir.1985) (trustee precluded from bringing preference suit after court approved stipulation requiring debtor to cure all prior defaults).

The situation in the instant case is different. As stated above, the Critical Vendor Order was permissive and not mandatory. In contrast, section 365 mandates that all pre-petition obligations be paid before a contract is assumed. 11 U.S.C. § 365(b)(1)(A). Further, the Critical Vendor Order itself precludes any reliance on section 365:

> Nothing herein shall be deemed an assumption or an authorization to assume any contracts or other agreements, under 11 U.S.C. § 365 or otherwise, with any of the Shippers, Distributors, Warehousemen or parties to whom Shipping Claims, Import Obligations and/or Warehousing Obligations may be owed.

(Critical Vendor Order at ¶ 7.)

Therefore, we reject Export's argument that the Critical Vendor Order insulates it from the instant preference challenge. Accordingly, we will not dismiss the Complaint on this basis.

## IV. CONCLUSION

For the reasons set forth above we deny Export's Motion to Dismiss with prejudice the Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

6. In fact, it is often at the same hearing that interim authority to use cash collateral or obtain post-petition financing is also granted. Such interim orders expressly preserve preference actions for unsecured creditors by preventing liens from attaching to them immediately. *See* Local Rule 4001–2(a)(i)(D).