**In re ZENITH INDUSTRIAL CORPORATION,**
Debtor.

**Zenith Industrial Corporation,**
**Plaintiff,**

v.

**Longwood Elastomers, Inc., Defendant.**

**Bankruptcy No. 02–10754(PJW).**
**Adversary No. 04–53015(PJW).**

United States Bankruptcy Court,
D. Delaware.

Jan. 24, 2005.

Thomas C. Martin, Fox Rothschild LLP, Wilmington, DE, Michael J. Connolly, Bressler, Amery & Ross, P.C., Morristown, NJ, for Longwood Elastomers, Inc.

Timothy Jay Houseal, Curtis J. Crowther, Sean T. Greecher, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for Zenith Industrial Corporation.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to defendant Longwood Elastomers, Inc.'s ("Longwood") motion (Adv.Doc. # 28)[1] seeking reconsideration of this Court's order entered November 4, 2004 (the "Order"), which granted Zenith Industrial Corporation's ("Zenith") motion to strike a defense asserted by Longwood in its answer. For the reasons set forth below, Longwood's motion will be granted to the extent that I will reconsider the Order, but I will ratify the Order on the merits.

## BACKGROUND

Zenith and its affiliates are leading suppliers of highly engineered metal-formed components, complex modules and mechanical assemblies for automotive original equipment manufacturers. Zenith manufactures components for approximately 127

---

1. Because this opinion refers to documents from both the adversary proceeding and the chapter 11 case dockets, I will designate documents from the adversary proceeding as "Adv. Doc. # ___" and those from the chapter case as "Case Doc. # ___".

modules on 94 platforms from plants in Europe and North America. Longwood is a supplier of goods that are used in the production of Zenith's products.

On March 12, 2002, Zenith filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").[2] With the filing of its petition, Zenith filed a motion seeking authority to pay pre-petition claims of certain vendors that, in Zenith's estimation, were essential to Zenith's on-going business. On March 14, 2002, the Court entered an order granting the relief sought by Zenith (the "Essential Vendor Order"). The essential vendor motion stated that Zenith "is seeking the entry of an order authorizing, but not requiring, it to pay, in the reasonable exercise of its business judgment, the pre-petition Date claims of certain essential vendors on the terms described herein in an aggregate amount not to exceed $1,000,000...." (Case Doc. # 8, ¶ 14.) The motion further stated that "[f]or all the foregoing reasons, the Debtor believes that payment of the pre-petition Date Essential Vendor Claims, *in the Debtor's sole discretion,* is appropriate and necessary." (Case Doc. # 8, ¶ 25 (emphasis in original).) The Essential Vendor Order likewise stated that Zenith "is authorized, but not required, in its sole discretion, to pay the prepetition Essential Vendor Claims, in the aggregate amount of up to $1,000,000 on the terms and conditions described in the Motion." (Case Doc. # 30, p. 1.)

On March 10, 2004, Zenith commenced this adversary proceeding against Longwood seeking to recover $1,317,587 of alleged § 547 preference transfers that were made during the ninety days prior to the petition date. The $1,317,587 figure comprises twelve separate transfers, including a $506,035 wire transfer made on the eve of the petition date.[3] On May 7, 2004, Longwood filed an answer in which it advanced twenty-four affirmative defenses. The twenty-first affirmative defense asserted that Longwood was a critical vendor of Zenith and was protected pursuant to the Essential Vendor Order (the "Essential Vendor Defense").

On October 5, 2004, Longwood sent a notice to Zenith requesting to take depositions related to the Essential Vendor Defense. In response to that notice, Zenith filed a motion to strike the Essential Vendor Defense pursuant to Federal Rule of Civil Procedure 12(f) and for a protective order from the discovery pursuant to Federal Rule of Civil Procedure 26(c).[4] Longwood did not timely respond to the motion to strike and the Court entered the Order striking the Essential Vendor Defense.

Upon learning of the Order, Longwood filed the instant motion seeking reconsideration of the Order, claiming that its failure to timely object is excusable and that there is merit to its Essential Vendor Defense. Zenith contests both of these positions.

## DISCUSSION

Longwood's failure to respond to the motion to strike was "due to the mistake and confusion on the part of local counsel as to the deadline for submitting the opposition." (Adv.Doc. # 28, ¶ 7.) After discovering its error, Longwood promptly filed the instant motion. The Court will excuse

---

**2.** Individual sections of the Bankruptcy Code will be cited herein as "§ ___".

**3.** While Longwood's reconsideration motion papers are not clear on the point, it appears that its argument is only directed to the

$506,035 wire transfer and not the aggregate amount alleged in the complaint. (*See* Adv. Doc. # 28, ¶¶ 15 and 29.)

**4.** Bankruptcy Rules 7012 and 7026 incorporate by reference Rules 12(f) and 26(c).

the error and consider the merits of the motion to strike to determine whether the Order should be vacated.

## Timeliness of the Motion to Strike

██ The first issue raised by Longwood with respect to the motion to strike is that it was untimely and therefore should be denied. With regard to the timing of a motion to strike, Federal Rule of Civil Procedure 12(f) provides, in relevant part, that "upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense . . . ." Fed.R.Civ.P. 12(f). Courts have generally found that the 20 day period is not a limiting factor. *Wine Mkts. Int'l, Inc. v. Bass,* 177 F.R.D. 128, 133 (E.D.N.Y.1998) ("In effect, the Court's discretion renders the twenty (20) day rule 'essentially unimportant.' "); *FDIC v. Pelletreau & Pelletreau,* 965 F.Supp. 381, 390 (E.D.N.Y.1997) ("[T]he time limitations in Rule 12(f) should not be applied strictly when the motion seems to have merit.") (quoting 5A Wright & Miller, Federal Practice and Procedure 2d, § 1380 (1990)); *Sheridan v. E.I. duPont de Nemours & Co.,* No. CIV.A. 93–46–SLR, 1994 WL 468711, at *11 (D.Del. March 28, 1994) ("Given that this motion raises significant issues of the rights of both the defendants and the plaintiff, in the interest of justice, the Court will entertain defendants' motion to strike." (citation omitted)).

In this case, it is understandable that Zenith did not file the motion to strike until over five months after Longwood filed its answer. Longwood included twenty-four affirmative defenses in its answer, none of which contained an explanation longer than one sentence. There was no activity with respect to this defense for nearly five months until Longwood filed its notice of discovery on October 5, 2004. Through the notice, Longwood sought to depose numerous current and former Zenith employees on "the facts and circumstances surrounding [Zenith]'s decision to seek post-petition relief on behalf of 'Single Source Vendors.' " (Adv. Doc. # 22, Exhibit D, p. 4.) In response, Zenith filed the motion to strike nine days later on October 14, 2004. There was no reason for Zenith to focus on the Essential Vendor Defense or any particular affirmative defense until it received the discovery notice. For these reasons, I conclude that it is appropriate to consider the motion to strike on the merits.

## Merits of the Motion to Strike

██ "A motion to strike under Rule 12(f) is the 'primary procedure' for objecting to an insufficient defense." *Cmty. Banks v. Start Props., II, LLC (In re Jarjisian),* 314 B.R. 318, 321 (Bankr. E.D.Pa.2004) (citations omitted). "A court can strike an affirmative defense 'when it is legally insufficient to prevent recovery under any state of facts reasonably able to be inferred from the well pleaded allegations of the answer.' " *United States v. Geppert Bros., Inc.,* 638 F.Supp. 996, 998 (E.D.Pa.1986) (citation omitted).

Longwood asserts that the Essential Vendor Defense is "legally cognizable" and "negates the requisite showing under 11 U.S.C. § 547(b)(5)." [5] (Adv.Doc. # 28,

---

**5.** Section 547(b)(5) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

\* \* \* \* \* \*

(5) that enables such creditor to receive more than such creditor would receive

¶¶ 18–19.) Longwood articulates the application of this defense as follows:

> Longwood seeks through its affirmative defense only to be treated equitably with other similarly situated vendors.

(Adv.Doc. # 28, ¶ 2.)

\* \* \* \* \* \*

> [H]ad the pre-petition transfers not been made to the Defendant, the Defendant would have received payment from the Debtor under the Essential Vendor Order. The critical vendor defense thereby negates the requisite showing under 11 U.S.C. § 547(b)(5).

(Adv.Doc. # 28, ¶ 19.)

\* \* \* \* \* \*

> If Longwood can establish that the Debtor would have paid it under the Essential Vendor Order if it had not paid it the day before the petition, then the payments to Longwood were not preferential. This conclusion may be supported by several separate legal theories, including but not limited to, estoppel, the critical vendor theory and the earmark doctrine.[6]

(Doc. # 28, ¶ 29.)

In support of its position, Longwood relies principally on two reported decisions:

*Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir.2003) and *Official Committee of Unsecured Creditors v. Medical Mutual of Ohio (In re Primary Health Systems, Inc.)*, 275 B.R. 709 (Bankr.D.Del.2002)(Fitzgerald, J.).

I find those two cases to be distinguishable. Moreover, as discussed in detail below, it is too speculative to determine that had Longwood not received the preferential transfer pre-petition, it would have been paid pursuant to an essential vendor payment authorization.

According to Longwood, the Third Circuit espoused an analysis similar to that of Longwood's in *Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir.2003). In *Kiwi*, the debtor made payments within ninety days of its bankruptcy filing to various creditors who were parties to executory contracts (including a lease). During its chapter 11 case, the debtor obtained an order from the Bankruptcy Court authorizing it to sell substantially all of its assets. *Id.* As part of the sale, the debtor also obtained court approval pursuant to § 365 to assume and assign the executory contracts with those various creditors.[7]

---

if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**6.** While Longwood asserts a right to have the transfer protected by virtue of estoppel and the earmark doctrine, its motion papers address only the critical vendor theory; there is no discussion of the other two theories.

**7.** In pertinent part § 365 provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of as-

sumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

\* \* \* \* \* \*

(f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

Pursuant to § 365, those creditors were entitled to receive payment for the unpaid pre-petition amounts owed by the debtor. Subsequently, a Chapter 11 trustee was appointed. The trustee filed preference complaints against those executory contract creditors. The defendants moved to dismiss the actions. The Bankruptcy Court granted the motions. The District Court affirmed the Bankruptcy Court. The Third Circuit affirmed the District Court.

> In sum, the payments to all three of the defendants here are not recoverable as preferences because, had the creditors not received the payments pre-petition, they would have received amounts reflecting those sums, in any event, when the Bankruptcy Court approved the cures of the assumed agreements.

*Kiwi*, 344 F.3d at 321.

I find *Kiwi* to be inapposite to the facts here. In order for a debtor to assume and assign an executory contract under § 365, a debtor is required to cure all defaults (including pre-petition defaults). By moving to assume and assign, the debtor in *Kiwi* sought authority to pay all pre-petition obligations to the contract parties. Here, Zenith did not seek, nor did it receive, an order from this Court requiring it to pay vendors through the Essential Vendor Order. Rather, Zenith sought and received, through the Essential Vendor Order, the right, not the obligation, to pay certain discrete pre-petition claims at Zenith's own discretion. In contrast to an order to assume and assign an executory contract, in which cure payments are mandatory, the Essential Vendor Order provided that payment of pre-petition obligations was wholly discretionary.

In *Kiwi*, the Third Circuit held that because the debtor elected to assume the executory contracts in the chapter 11 case, the hypothetical liquidation analysis under § 547(b)(5) should be applied differently to the parties whose contracts were assumed and assigned, stating that "the trustee's analysis [of such lessors' rights as being no greater than that of general unsecured creditors] disregards the unique set of rights provided to the defendants by § 365 ...." *Kiwi*, 344 F.3d at 317. Fundamental to the order authorizing the debtor to assume the contracts in the *Kiwi* case was the § 365 requirement that the contract parties be paid in full with respect to pre-petition obligations. By filing a preference action against the contract parties in *Kiwi*, the chapter 7 trustee was improperly seeking to vitiate the right that § 365 accorded the parties whose contracts were assumed—a right to a complete cure of all pre-petition obligations. The circumstances are entirely different here. The Essential Vendor Order did not require that any payments be made, did not identify any vendors who might be beneficiaries of the order, and because Longwood had been paid pre-petition it could not possibly be deemed a beneficiary of that order.

Longwood cites *Official Committee of Unsecured Creditors v. Medical Mutual of Ohio* (*In re Primary Health Systems, Inc.*), 275 B.R. 709 (Bankr.D.Del.2002) (Fitzgerald, J.) as a case that, by implication, stands for the proposition that the Essential Vendor Defense is legally sufficient. In that case, the debtor sought and obtained an order authorizing it to pay

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
(B) adequate assurance of future performance by the assignee of such contract

or lease is provided, whether or not there has been a default in such contract or lease.

pre-petition claims related to wages and benefits. Thereafter, the creditors' committee filed a preference action against a creditor (the administrator of an employee benefits plan) that received payments from the debtor pursuant to the order. The court ruled that because of the order authorizing payment, a preference action could not be sustained to avoid those payments. I find the *Primary Health* case to be inapplicable to whether a preference action is barred by the entry of a critical vendor order that may implicate the preference action defendant. Indeed, in a subsequent ruling Judge Fitzgerald rejected the argument that her ruling in *Primary Health* supports a defense for preference defendants where a critical vendor order has been entered.

In *Vistar Corp. v. USOP Liquidating LLC* and *USOP Liquidating LLC v. United Stationers, Inc.* (*In re U.S. Office Products Co.*), Adv. Nos. 02–7192 and 03–50990, Tr. of Hr'g (Bankr.D.Del. October 15, 2004)(Fitzgerald, J.), Judge Fitzgerald rejected the arguments of preference defendants that the entry of a critical vendor order absolved the defendants from preference liability. In *U.S. Office Products,* the two defendants were both explicitly named in the critical vendor motion. They were subsequently paid pursuant to the order entered by the court approving payments to critical vendors. Later, preference actions were brought against the defendants to recover payments made pre-petition. The defendants argued that the *Primary Health* decision stood for the proposition that the entry of a critical vendor order foreclosed subsequent preference liability.

Judge Fitzgerald rejected the notion that her ruling in *Primary Health* stood for this general proposition. The most significant difference between the circumstances in *Primary Health* and in *U.S.*

*Office Products* was that the order authorizing payment of pre-petition obligations in *Primary Health* authorized the debtor to pay claims of employees who held priority claims. (*U.S. Office Products,* Tr. at p. 8 ("my *Primary Health* decision was based on the fact that those were employees with priority claims. It's an entirely different thing.").) In *U.S. Office Products,* the critical vendor order authorized the debtor to pay general unsecured claims. Judge Fitzgerald noted that in *Primary Health,*

> the payments that were made pursuant to the order in that case were within the priorities. Not one person got a dime more than the priority amounts. They would've been entitled to those priority amounts in any event in the Chapter 7 ahead of the unsecured creditors.... You're looking here [in *U.S. Office Products*] at simply having one unsecured creditor as a opposed to another unsecured creditor. That wasn't the situation in *Primary Health.* It was a creditor group that had priority claims as opposed to unsecured priority claims, and in the pecking order of the Bankruptcy Code the priorities get paid first.

(*U.S. Office Products,* Tr. at pp. 48–49.)

The matter before me is quite similar to that addressed in *HLI Creditor Trust v. Export Corp.* (*In re Hayes Lemmerz International, Inc.*), 313 B.R. 189 (Bankr.D.Del.2004)(Walrath, J.) where the court denied a motion to dismiss a preference action against a vendor who claimed it was protected by a critical vendor order. In doing so, the court made several important points for present consideration. First, the payments that were the subject of the preference action were made before the critical vendor order was entered and, therefore, not pursuant to that order. Second, because the critical vendor order was permissive, the court stated that "even if [the defendant] had received some pay-

ments under the Critical Vendor Order, it does not follow that it was entitled to receive payment of all pre-petition claims." *Id.* at 193. In this regard, the court noted that the defendant was not designated as a critical vendor in the order and that there was no analysis of preference actions in connection to entry of the critical vendor order. As stated above, the Essential Vendor Order before me provides that Zenith was "authorized, but not required, in its sole discretion, to pay the prepetition Essential Vendor Claims ...." (Case Doc. # 30 at 1.) Finally, the *Hayes* court rejected the analogy to a situation where a debtor assumes a contract pursuant to § 365. The court stated that "the Critical Vendor Order was permissive and not mandatory. In contrast, section 365 mandates that all pre-petition obligations be paid before a contract is assumed.". *Id.* at 194.

In its reply brief, Longwood amplifies the theory of its Essential Vendor Defense as follows:

> Through discovery, Longwood will be able to establish that it was an "essential vendor" of the Debtor within the meaning of the Essential Vendor Order. Longwood also will establish that, as an essential vendor, the Debtor would have paid Longwood under the terms of the Essential Vendor Order had Longwood not received payments shortly before the commencement of this case. Longwood will demonstrate that the Debtor would have had to pay Longwood "in order to preserve the enterprise value" of the Debtor's business in connection with the sale of the Debtor just as the Debtor felt it necessary to pay other vendors .... Thus, Longwood will demonstrate that it would have received no more as a result of the alleged preferen-

tial payments then it would have received through this case.

(Adv.Doc. # 31, ¶ 3.)

■ Approval of a critical vendor motion is discretionary based upon the facts and circumstances presented. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824–26 (D.Del.1999).

■ Even if Longwood establishes through discovery that Zenith understood Longwood to be an essential vendor and that absent the pre-petition payment of $506,035 Zenith would have intended to pay Longwood as a beneficiary of the Essential Vendor Order, Longwood would still fall short of its burden. Indeed, even if Zenith were to now stipulate with Longwood that Longwood was an essential vendor as contemplated by the essential vendor motion, and that absent the pre-petition payment it would have included the $506,035 in the relief requested, that would not be sufficient. This is so because if the preference payment had not been made and the $506,035 amount was included in Zenith's motion, Longwood would still have to prove that the Court would have approved the motion. It is speculation to conclude that no party in interest, including the pre-petition secured lender in this case and the U.S. Trustee, would have objected or that the Court would have granted a motion that had not been made, i.e., a motion embodying facts different from those set forth in the motion that was approved.

With respect to the essential vendor motion, Zenith's counsel made the following representation at the first day hearing: "We've advised the U.S. Trustee's office that that covers approximately 50 vendors, the essential vendor program. And, again, we seek only up to $1M." The Court then observed: "Okay. The million dollar cap seems appropriate or reasonable under these circumstances." (Case Doc. # 107,

pp. 7–8.) In connection with essential vendor motions, the U.S. Trustee often queries the debtor prior to the hearing as to the identity of targeted creditors and the individual amounts proposed to be paid. These inquiries often bring out relevant facts not set forth in the motion itself. The Court obviously welcomes the U.S. Trustee's position on critical vendor motions and debtors often modify their request in order to avoid a courtroom dispute on a U.S. Trustee's objection to such a motion. From Zenith's counsel's statement at the first-day hearing, it seems clear that an inquiry was made by the U.S. Trustee and the U.S. Trustee was satisfied that the details given to her justified taking a no objection position. Whether Zenith would have been able to obtain the U.S. Trustee's acquiescence to the Essential Vendor Order if it added $506,035 to the $1,000,000 is problematic. Adding a fifty percent increase to the amount originally sought obviously changes the facts underlying the motion and makes it uncertain that the U.S. Trustee would have taken the same position.

Furthermore, how are we to know that the pre-petition secured lender (who consented to the use of cash collateral pursuant to an agreed budget) would not have objected to such a large payment? And, of course, assuming that the U.S. Trustee and the pre-petition secured lender would not have opposed such a payment to Longwood, how does one prove that the Court, acting within its discretion, would have approved the request?

It is important to note the significance of the $506,035 transaction relative to the relief granted by the Essential Vendor Order. For example, the Debtor's petition lists the twenty largest unsecured claims.

(*See* Case Doc. # 1, Form 4.) Excluding claims by noteholders, Ford Motor Co. and General Motors Corp. (the latter two both being purchasers of Zenith's products), the remaining eleven creditors appear to be trade vendors with claims ranging from a high of $93,985 to a low of $21,815. The aggregate amount of the eleven claims is $498,499, or an average claim of $45,318. Assuming that some or all of those eleven trade creditors received essential vendor payments, the individual amounts going to the remaining fifty vendors would be very small. If all fifty creditors received an equal share of the $1,000,000 each would have received $20,000 (i.e., $1,000,000 + 50 = $20,000).[8] It is obvious that adding the $506,035 claim would materially alter the facts upon which the Essential Vendor Order is based. Thus, it is speculation to assume that absent the pre-petition payment of $506,035 the Court would have authorized a payment of that magnitude to one creditor, Longwood. If the $506,035 preference payment amount had been included in the relief requested by the Debtor, the simple fact is the relief may have been denied, or granted as to vendors other than Longwood.

The issue presented here is similar to an issue addressed by the Third Circuit in *Kiwi*. There the Court found that "[t]he trustee's characterization of the defendants' claims as unsecured on the filing date seems to presuppose that a hypothetical Chapter 7 trustee would have elected to reject the debtor's agreements with them." *Kiwi*, 344 F.3d at 318. As to that position, the Court observed: "However, the agreements here were not rejected and they would *not necessarily* have been rejected in a hypothetical Chapter 7 liquidation." *Id.* at 318–19 (footnote omitted)

---

8. The record does not disclose whether in fact Zenith made payments up to the full authorized amount of $1,000,000.

(emphasis added). Similarly here, Longwood is arguing that the Court would have approved the motion that Zenith would have made absent the pre-petition payment to Longwood. This is not necessarily so and I know of no conceivable way that Longwood could present evidence to show that it would be so.

Finally, I note that one could hypothesize that Zenith wire transferred the $506,035 on the eve of the petition date because of its perceived risk that including in the motion such a large payment to one vendor would produce an objection that could result in a complete or partial denial of the motion.

For the foregoing reasons, the twenty-first affirmative defense was properly struck because "it is legally insufficient to prevent recovery under any state of facts *reasonably able to be inferred* from the well pleaded allegations of the answer." *Geppert Bros., Inc.*, 638 F.Supp. at 998 (emphasis added). Therefore, after reconsidering the merits of the motion to strike, the Order is ratified on the merits.