**In re BRIDGE INFORMATION SYSTEMS, INC., Debtor.**

**Scott P. Peltz, Plan Administrator, Plaintiff,**

**v.**

**Hartford Life Insurance Co., Defendant.**

**Bankruptcy No. 01–41593–293.**
**Adversary No. 03–4185–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Jan. 25, 2005.

Gregory D. Willard, Bryan Cave, St. Louis, MO, for Debtor.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Scott Peltz, as Plan Administrator[1] for the estate of Bridge Information Systems, Inc. ("Bridge"), filed this adversary proceeding against Hartford Life Insurance Company ("Hartford"). Plan Administrator seeks to avoid nineteen payments totaling $ 291,889.34 as preferential transfer under 11 U.S.C. § 547(b) that Bridge made to Hartford.

The case is before the Court on Hartford's Motion for Summary Judgement under Fed.R.Civ.P. 56, made applicable to this proceeding by Bankr.R. 7056. Hartford first argues that summary judgment is appropriate because there are no material facts in dispute that the payments in question improved its position vis-a-vis a hypothetical liquidation as required by 11 U.S.C. § 547(b)(5). Hartford argues in the alternative that even if the challenged transfers were preferential under § 547(b)(5), Plan Administrator may not avoid them under either the contemporaneous new value or the ordinary course of business defense contained 11 U.S.C. §§ 547(c)(1) or (c)(4) respectively. The Court will grant Hartford's motion in part for the following reasons.

---

1. Pursuant to the Joint Plan of Liquidation, confirmed by this Court on February 13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under 11 U.S.C. § 547 on behalf of Bridge's estate.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and the subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FINDINGS OF FACT

Viewing the summary judgment record in the light most favorable to the nonmovant, Plan Administrator, the following undisputed facts emerge. Hartford provided two distinct services to Bridge and Bridge's employees. First, Hartford issued supplemental life and disability insurance policies to Bridge's employees. Bridge actually remitted the premium payments to Hartford on these policies but Bridge recouped those payments from its employees by withholding the premiums from the employees' paychecks.

Second, Hartford served as plan administrator for Bridge's short-term disability benefits program for Bridge's employees. (the "ASO Services"). As part of the ASO Services it provided to Bridge, Hartford evaluated and paid short-term disability claims to Bridge's employees. Hartford would then submit a weekly summary of the claims and payments to Bridge by fax transmission. (the "Claims Summary"). Bridge would then reimburse Hartford by wire transfer on the business day following Bridge's receipt of the Claims Summary.

Bridge filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. This Court entered an order on February 16, 2001 that authorized Bridge, as debtor-in-possession, to continue to remit payments to Hartford to administer Bridge's employee benefits programs, including paying Hart-

ford for its prepetition services. (the "Benefits Order"). The Benefits Order recited that nothing in it required Bridge to assume any executory contract. The Benefits Order also provided Bridge with the sole discretion to make whatever payments to Hartford that it deemed necessary.

Plan Administrator filed the instant adversary complaint on February 10, 2003 seeking to avoid nineteen transfers totaling $291,889.34 that Bridge remitted to Hartford as preferential under 11 U.S.C. § 547(b). (collectively the "Transfers"). Plan Administrator is also attempting to recover the $291,889.34 from Hartford under 11 U.S.C. § 550(a)(1).

The Transfers can be separated into three discrete categories. The first set of Transfers consist of thirteen wire transfers totaling $90,377.17 from Bridge to Hartford to reimburse Hartford for its payment of the short term disability claims of Bridge's employees. (the "Wire Transfers"). Bridge remitted all the Wire Transfers to Hartford the business day following Bridge's receipt of the weekly Claims Summary, which is consistent with the timing and manner prescribed by the parties' agreement.

The second group of Transfers consists of three payments totaling $29,915.00 from Bridge to Hartford as payment for Hartford's ASO Services. (the "ASO Fees"). The final category of Transfers is comprised of three payments from Bridge to Hartford totaling $171,609.23 as premium payments on the life and disability policies issued to Bridge's employees. (the "Premium Payments"). Although Bridge remitted the Premium Payments to Hartford, Bridge collected $71,172.08 of the Premium Payments from its employees by withholding that amount from its employees' paychecks.

Hartford filed the instant motion for summary judgment contending it is entitled to judgment as a matter of law on Plan Administrator's complaint. The Court will grant Hartford's motion with respect to the $71,172.08 in Premium Payments that Bridge's employees actually paid and the $90,377.17 in Wire Transfers. The Court will deny the motion in all other respects.

## DISCUSSION

### A. Introduction

Hartford presents four argument in its motion. Hartford, in its first two arguments, contends that there are no material facts in dispute that the Transfers are not preferential under 11 U.S.C. § 547(b). Hartford first maintains that if Bridge had not remitted the Transfers to it, it would have been entitled to payment in full for its pre-petition services to Bridge under 11 U.S.C. § 507(a)(4). Therefore, Hartford maintains that the Transfers did not allow it to receive more than it would have received in a hypothetical Chapter 7 proceeding as required by 11 U.S.C. § 547(b)(5). Hartford next argues that the $71,172.08 in Premium Payments that Bridge's employees actually paid was not a transfer of property in which Bridge had an interest as required by 11 U.S.C. § 547(b).

Hartford contends in its final two points that even if the Transfers were preferential under 11 U.S.C. § 547(b), Plan Administrator may not avoid them under either the contemporaneous new value defense or the ordinary course of business defense contained in 11 U.S.C. §§ 547(c)(1) & (c)(2) respectively. Specifically, Hartford contends in its third point that Plan Administrator may not avoid the Wire Transfers because it provided Bridge with new value substantially contemporaneous with it receiving the Wire Transfers under 11 U.S.C. § 547(c)(1). Hartford maintains in its final point that Plan Administrator may not avoid any of the Transfers because Bridge made them in the ordinary course of business as provided in 11 U.S.C. § 547(c)(2).

Plan Administrator concedes that he may not avoid the $71,172.08 in Premium Payments that Bridge's employees actually paid. Thus, the Court will grant Hartford's motion with respect to that portion of the Premium Payments. The Court also finds that there are no material facts in dispute that Hartford provided new value to Bridge in paying the short term disability claims of Bridge's employees substantially contemporaneous with Bridge remitting the Wire Transfers. Thus, Hartford is entitled to summary judgment with respect to the Wire Transfers under its contemporaneous new value defense.

The Court finds, however, that there are genuine issues of material fact in dispute for trial with respect to whether Bridge remitted the Premium Payments and the ASO Fees in the ordinary course of business under 11 U.S.C. § 547(c)(2). Therefore, the Court will deny Hartford's motion with respect to the balance of the Premium Payments and the ASO Fees.

### B. Summary Judgment Standard

Summary judgment is proper if the record viewed in the light most favorable to the non-movant demonstrates that there are no material facts in dispute so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Evergreen Inv. v. FCL Graphics, Inc.*, 334 F.3d 750, 752 (8th Cir.2003). The movant has the initial burden of producing evidence that demonstrates the absence of a genuine issue of a material fact. *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001). Once the movant has met its initial burden, the burden then shifts to the non-

movant to produce evidence that demonstrates the existence of a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Prudential Ins. Co. v. Hinkel,* 121 F.3d 364, 366 (8th Cir.1997) *cert. denied* 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

*C. The Elements of Plan Administrator's Preference Action*

Section 547(b) provides that a trustee or debtor-in-possession may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

·(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been . made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Plan Administrator, as the party seeking to avoid the Transfers, bears the burden of establishing each element of its preference cause of action by a preponderance of the evidence. 11 U.S.C. § 547(g); *Stingley v. AlliedSignal, Inc. (In re Libby*

*Int'l, Inc.),* 247 B.R. 463, 466 (8th Cir. BAP 2000).

*1. There are material issues of facts in dispute as to whether Plan Administrator can establish his burden of proof under 11 U.S.C. § 547(b)(5).*

Hartford first contends that Plan Administrator cannot establish that Hartford's receipt of the Transfers is greater than the distribution it would have received in a hypothetical Chapter 7 liquidation as required by 11 U.S.C. § 547(b)(5). Hartford advances three arguments in support of this theory.

Hartford first states that because the Benefits Order authorized Bridge to remit payment to Hartford for Hartford's pre-petition services, Plan Administrator may not avoid the pre-petition Transfers as preferential. Hartford relies upon *Primary Health Sys., Inc. v. Med. Mut. of Ohio (In re Primary Health Sys., Inc.),* 275 B.R. 709 (Bankr.D.Del.2002) to support its position. The *Med. Mut.* decision, however, is distinguishable from the instant case because the holding in *Med. Mut.* is premised on a theory that because the debtor-in-possession remitted the challenged payments pursuant to a benefits order, it could not avoid those payments as preferential under 11 U.S.C. § 547(b). *Id.* at 711.

■ Here, Bridge did not remit the Transfers pursuant to the Benefits Order. In fact, Bridge remitted the disputed Transfers pre-petition while the Benefits Order was entered post-petition. Therefore, the Benefits Order does not protect the Transfers from Plan Administrator's preference action.[2] *HLI Creditor Trust. v. Export Corp. (In re Hayes Lemmerz Int'l,* ·

2. The Court also notes that *Med Mut.* decision is of dubious authority given that the same Court explicitly rejected its holding in *HLI*

*Creditor Trust. See HLI Creditor Trust,* 313 B.R. at 194.

*Inc.),* 313 B.R. 189, 193 (Bankr.D.Del. 2004).

■ Hartford also maintains that because the Benefits Order required Bridge to pay Hartford for its pre-petition services, Plan Administrator may not avoid the Transfers as preferential under 11 U.S.C. § 547(b). Hartford, apparently, is arguing that the Benefits Order was analogous to Bridge's assumption of an executory contract with Hartford under 11 U.S.C. § 365(b)(1). Hartford, however, premises this argument on the incorrect assumption that the Benefits Order mandated that Bridge pay Hartford for Hartford's pre-petition services.

The Benefits Order unequivocally provided Bridge with the discretion to pay Hartford. The Benefits Order also explicitly recites that nothing contained in it shall be construed as Bridge's assumption of any executory contract. Because the Benefits Order was merely permissive and expressly provides that it did not require Bridge to assume any executory contract with Hartford, the Benefits Order cannot insulate the Transfers from Plan Administrator's preference action. *HLI Creditor Trust,* 313 B.R. at 194.

Hartford additionally asserts that because Bridge would have been required to pay Hartford in full for its pre-petition services under 11 U.S.C. § 507(a)(4), Plan Administrator cannot establish that Hartford received more in the Transfers than it would have received in a hypothetical Chapter 7 liquidation. Hartford bases this contention on an argument that Bridge remitted the Transfers to Hartford in exchange for Hartford's provision of services relating to Bridge's employee benefit plans. Thus, if Bridge had not paid Hartford for these services, Hartford maintains it would have possessed a priority claim against Bridge's estate under 11 U.S.C. § 507(a)(4). Therefore, Hartford contends, it would have been entitled to payment in full for its pre-petition services had Bridge not remitted the Transfers to it.

■■ The Code, however, limits priority claims for contributions to an employee benefit plan to $4,300 per employee. 11 U.S.C. § 507(a)(4)(B). Because Bridge had 2,300 employees as of the petition date, the statutory cap for priority claims relating to prepetition contributions to its employee benefit plan is $9,890,000. Here, there are material issues of fact in dispute as to whether the total amount of priority claims for pre-petition contributions to Bridge's employee health plans exceed that statutory cap.

The summary judgment record indicates that Bridge paid out approximately $9,461,974.36 to claimants for pre-petition services relating to its employee benefit plans pursuant to the Benefits Order. Creditors have also filed priority claims for pre-petition contribution to Bridge's employee benefit plans in the amount of $700,000 that Bridge has not yet paid. (See Liquidation Analysis to Bridge's Disclosure Statement, Exhibit B to Plan Administrator's memorandum in opposition). Accordingly, the record indicates that the there are material question of fact in dispute as to whether the total amount of priority claims for pre-petition contribution to Bridge's employee benefit plans exceeds the statutory cap for such claims. Thus, viewing the summary judgment record in the light most favorable to Plan Administrator, there are material issues of fact in dispute for trial as to whether Hartford would have been entitled to payment in full on its pre-petition claim in a hypothetical Chapter 7 liquidation.

*2. Plan Administrator may not avoid the $71,172.08 in Premium Payments remitted by Bridge's employees.*

Hartford next argues that Plan Administrator may not avoid the $71,172.08 in

Premium Payments that Bridge's employees actually paid. Plan Administrator concedes that he cannot avoid the $71,172.08 and recites in his memorandum in opposition to Hartford's motion that he intends to file an amended complaint that omits this amount. Plan Administrator, however, has failed to file such an amended complaint. Accordingly, the Court will grant Hartford's motion with respect to the $71,172.08 in Premium Payments that Bridge's employees paid.

*D. Bridge received new value from Hartford substantially contemporaneous with remitting the Wire Transfers.*

*1. Elements of Hartford's contemporaneous new value defense.*

Hartford next argues that there are no material facts in dispute that Plan Administrator may not avoid the Wire Transfers under the contemporaneous new value defense codified at 11 U.S.C. § 547(c)(1). Specifically, Hartford argues that there are no issue of material fact in dispute that it provided new value to Bridge in paying the short term disability claims of Bridge's employees substantially contemporaneous with receiving the Wire Transfers. The Court agrees.

■ Section 547(c)(1) provides that a trustee may not avoid a preferential transfer to the extent that the transfer was "(A) intended by the debtor and the creditor…to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." Because 11 U.S.C. § 547(c)(1) is an affirmative defense to a preference cause of action, the transferee creditor bears the burden of proof. 11 U.S.C. § 547(g). Specifically, to establish its contemporaneous new value defense under 11 U.S.C. § 547(c)(1), the transferee creditor must demonstrate by a preponderance of the evidence that: (1) the parties intended

that the debtor receive new value contemporaneously with remitting the preferential transfer; and (2) the debtor in fact received new value substantially contemporaneous with remitting the preferential transfer. *Tyler v. Swiss Am. Sec. (In re Lewellyn & Co., Inc.)*, 929 F.2d 424, 427 (8th Cir.1991).

*2. Hartford provided new value to Bridge in exchange for the Wire Transfers.*

■ The first issue in analyzing Hartford's contemporaneous new value defense is whether it provided new value to Bridge in exchange for the Wire Transfers. The Code defines new value in relevant part as "money or money's worth in goods, services, or new credit." 11 U.S.C. § 547(a)(2). A creditor's payment of employee benefits to the debtor's employees constitutes money's worth of services to the debtor and falls squarely within the definition of new value under § 547(a)(2). *Jones Truck Lines, Inc. v. Cent. States, Southeast & Southwest Areas Pension Fund (In re Jones Truck Lines)*, 130 F.3d 323, 327 (8th Cir.1997). This is the case even if the creditor does not pay the employee benefits directly to the debtor but rather to the debtor's employees. *Id.*

■ Here, the undisputed evidence in the summary judgment record establishes that Hartford paid Bridge's employees' short-term disability claims (the "Short Term Disability Payments") in exchange for the Wire Transfers. In fact, the Wire Transfers were simply Bridge's reimbursement to Hartford for the previous week's Short Term Disability Payments. Thus, the Wire Transfers in no way depleted Bridge's financial position on the eve of bankruptcy to the detriment of Bridge's other creditors, which is a strong policy rationale underlying the new value exceptions contained in both 11 U.S.C. §§ 547(c)(1) and (c)(4). *See Harrah's Tu-*

*nica Corp. v. Meeks (In re Armstrong)*, 291 F.3d 517, 526 (8th Cir.2002).

Based on this record, the Court finds that there are no materials facts in dispute that Hartford provided Bridge with new value in exchange for the Wire Transfers.

*3. Hartford and Bridge intended the Wire Transfers to be contemporaneously exchanged for the new value.*

Hartford must also demonstrate that both it and Bridge intended for the Wire Transfers to be a contemporaneous exchange for Hartford's provision of the Short Term Disability Payments. Here, Hartford points to two undisputed facts in arguing that the parties intended for the Wire Transfers to be contemporaneous exchanged for the Short Term Disability Payments. First, Hartford notes that the parties' agreement required Bridge to reimburse Hartford for the Short Term Disability Payments the business day following Bridge's receipt of the Claims Summary. Second, Hartford points out that Bridge invariably reimbursed Hartford by wire transfer the business day following Bridge's receipt of the Claims Summary.

■■ Plan Administrator counters by arguing that because he has not stipulated to Bridge's intent in making the Wire Transfers, there are material facts in dispute on this issue. The objective circumstances surrounding the parties' relationship, however, such as any written agreement between the parties and the parties' past course of dealing, is evidence of whether the parties intended for the challenged transfer to be an contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1). *Lewellyn*, 929 F.2d at 428.

Here, the summary judgment record establishes that the parties' agreement required Bridge to remit the Wire Transfers to Hartford the day after receiving the Claims Summary. Also the evidence in the summary judgment record indicates that Bridge invariably remitted the Wire Transfers to Hartford in accordance with the terms of the agreement. And Plan Administrator's naked assertion that he cannot stipulate to Bridge's intent in remitting the Wire Transfers is not sufficient to create a genuine issue of material fact for trial under Fed.R.Civ.P. 56(e). Accordingly, the Court finds that there are no material facts in dispute for trial on the issue of whether the parties intended for the Wire Transfers to be a contemporaneous exchange for new value.

*4. The Wire Transfers were in fact a substantially contemporaneous exchange for new value.*

■■ The final element that Hartford must demonstrate to establish its contemporaneous new value defense under 11 U.S.C. § 547(c)(1) is that the Wire Transfers were in fact substantially contemporaneously exchanged for the Short Term Disability Payments. Because the statute only requires that the exchange be substantially contemporaneous with the creditor's provision of new value, the determination of whether the exchange was in fact contemporaneous is a flexible one. *Lindquist v. Dorholt (In re Dorholt)*, 224 F.3d 871, 874 (8th Cir.2000). Also, the creditor transferee may provide the new value either before or after the debtor remits the preferential transfer. *Silverman Consulting, Inc. v. Canfor Wood Products Mktg. (In re Payless Cashways)*, 306 B.R. 243, 252 (8th Cir. BAP 2004). Further, the analysis should not only include an examination of the proximity in time between when the debtor remitted the challenged transfer and when the creditor provided the new value, but also whether the exchange occurred within the time frame

established by the parties' agreement. *Lewellyn,* 929 F.2d at 428.

Here, the uncontested evidence in the summary judgment record establishes the following facts. First, Bridge remitted the Wire Transfers to Hartford one business day after Bridge received the Claims Summary from Hartford. Also, as discussed above, the Wire Transfers were simply Bridge's reimbursement to Hartford for the previous week's Short Term Disability Payments. Further, Bridge remitted the Wire Transfers to Hartford within the time frame established by the parties' agreement. The Court finds that based on this record, Hartford has established that its provision of the Short Term Disability Payments was in fact substantially contemporaneous with Bridge's remission of the Wire Transfers.

In conclusion, there are no material facts in dispute that Hartford provided new value to Bridge in exchange for the Wire Transfers in the form of the Short Term Disability Payments. Also, the summary judgment record demonstrates that there are no issues in dispute that the parties intended for the Wire Transfers to be a contemporaneous exchange for the Short Term Disability Payments and that the exchange was in fact substantially contemporaneous. Thus, Hartford is entitled to judgment as a matter of law on its claim that Plan Administrator may not avoid the Wire Transfers under 11 U.S.C. § 547(c)(1).

*D. There are material facts in dispute for trial as to whether Bridge remitted the Premium Payments and the ASO Fees in the ordinary course of business under 11 U.S.C. § 547(c)(2).*

Hartford's final argument is that Plan Administrator may not avoid the Premium Payments and the ASO Fees under 11 U.S.C. § 547(c)(2). Specifically, Hartford contends that there are no material facts

in dispute that Bridge remitted both the Premium Payments and the ASO Fees to Hartford in the ordinary course of business. The Court disagrees.

 Section 547(c)(2) provides that a trustee may not avoid a preferential transfer to the extent that the transfer was: (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms. The transferee must prove each of the three statutory elements by preponderance of the evidence. *Official Plan Comm. v. Expeditors Int'l of Washington (In re Gateway Pacific Corp.),* 214 B.R. 870, 874 (8th Cir. BAP 1997) *aff'd.* 153 F.3d 915 (8th Cir.1998).

 Each of the three statutory elements of the ordinary course of business defense under § 547(c)(2) is separate and distinct from the other two and the transferee has the burden of independently proving each of the elements. *Jones v. United Sav. & Loan Assn. (In re U.S.A. Inns),* 9 F.3d 680, 684 (8th Cir.1993); *Centr. Hardware Co. v. Walker–Williams Lumber Co. (In re Spirit Holding Co., Inc.),* 214 B.R. 891, 897 (E.D.Mo.1997) *aff'd.* 153 F.3d 902 (8th Cir.1998). Accordingly, to prevail in its motion for summary judgment on this issue, Hartford must produce sufficient evidence to establish that there are no material facts in dispute as to all of the three statutory elements of § 547(c)(2).

 Hartford has failed to establish that there are no material facts in dispute with respect to the objective prong of the ordinary course defense contained in § 547(c)(2)(C) concerning both the Premium Payments and the ASO Fees. The

analysis under § 547(c)(2)(C) focuses on whether the transfer was objectively ordinary. The transferee must adduce evidence that the transfer was objectively ordinary in relation to the standards prevailing in the relevant industry in order to demonstrate that the transfer was made according to ordinary business terms under § 547(c)(2)(C). *In re U.S.A. Inns*, 9 F.3d 680 at 684. Accordingly, the transferee must produce evidence that establishes the prevailing practices utilized by members of the relevant industry when engaging in transactions that are similar to the challenged transfer. *Id.*

Here, the only evidence as to whether the ASO Fees and the Premium Payments were objectively ordinary are the self-serving statements in the affidavits from three Hartford employees (the "Hartford Employees"). The Hartford Employees simply recite that Bridge remitted the Premium Payments and the ASO Fees consistent with industry standards. This evidence is insufficient to establish that there are no material facts in dispute concerning the objective prong of Hartford's ordinary course defense.

It is certainly true that the objective prong of § 547(c)(2)(C) maybe established by the testimony of an employee or officer of the transferee. That testimony, however, must establish the range of the prevailing practices within that industry. *Jones v. United Sav. & Loan Assn. (In re U.S.A. Inns)*, 9 F.3d 680, 684 (8th Cir.1993). Also, the evidence must be based on the employee's first hand knowledge to be competent evidence that the transaction was objectively ordinary under 11 U.S.C. § 547(c)(2)(C). *Centr. Hardware Co. v. Walker–Williams Lumber Co.*, 214 B.R. 891, 901–02 (E.D.Mo.1997) *aff'd*, 153 F.3d 902 (8th Cir.1998).

The Court finds that there is no competent evidence in the record as to what is the relevant industry standard. The Hartford Employees merely make the naked assertion that Bridge remitted the Premium Payments and the ASO Fees consistent with industry practice. None of the Hartford Employees outline the range of the prevailing practices within the industry or how either the Premium Payments or the ASO Fees fit within that range. Also, there is nothing in the record to suggest that the Hartford Employees based their conclusions on firsthand knowledge.

After reviewing this record in the light most favorable to Plan Administrator, the Court finds that there are genuine issues of material facts in dispute whether Hartford's payment of the ASO Fees and the Premium Payments were objectively ordinary under 11 U.S.C. § 547(c)(2)(C). Thus, Hartford is not entitled to judgment as a matter of law on its ordinary course defense contained in 11 U.S.C. § 547(c)(2) with respect to the Premium Payments and the ASO Fees.

### CONCLUSION

There are material facts in dispute as to whether Hartford received more in the Transfers than it would have received in a hypothetical Chapter 7 liquidation as required by 11 U.S.C. § 547(b)(5). Also, there are material facts in dispute as to whether Bridge remitted the Premium Payments and the ASO Fees to Hartford in the ordinary course of business under 11 U.S.C. § 547(c)(4).

There is no dispute, however, that Plan Administrator may not avoid the $71,172.08 in Premium Payments that Bridge's employees actually paid. Also, the summary judgment record demonstrates that there are no material questions of fact in dispute that the Wire Transfers were a contemporaneous ex-

change for new value under 11 U.S.C. § 547(c)(1). Accordingly, Hartford is entitled to summary judgment under Fed. R.Civ.P. 56(c) with respect to the $71,172.08 in Premium Payments paid by Bridge's employees and the Wire Transfers.

An Order consistent with this Memorandum Opinion will be entered this date.