**In re Ernest L. McDONALD, Sr., Debtor.**

**Gordon P. Jones, Chapter 7 Trustee, Plaintiff,**

v.

**Vernon Williams, Defendant.**

**Bankruptcy No. 00–5311–3F7.
Adversary No. 00–384.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 17, 2001.

**634**

Raymond R. Magley, Jacksonville, FL, for Plaintiff.

Lance P. Cohen, Jacksonville, FL, for Defendant.

Gordon P. Jones, Jacksonville, FL, Chapter 7 Trustee.

Albert H. Mickler, Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding came before the Court for trial of the Amended Complaint filed by Gordon P. Jones ("Plaintiff"), Chapter 7 Trustee of the bankruptcy estate of Ernest L. McDonald ("Debtor"), on December 8, 2000. (Adv.Doc. 16.) Vernon Williams ("Defendant") filed an Answer to the Amended Complaint on June 12, 2001. (Adv.Doc. 21.) On August 8, 2001, the Court held a trial of the Proceeding and took the matter under advisement. (Adv. Doc. 28.) Upon review of the evidence presented at trial and upon review of the arguments of counsel, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

At all times relevant to the instant Proceeding, Debtor resided at the Sundown Mobile Home Village in Jacksonville, Duval County, Florida.

At some point Debtor decided to purchase either of two mobile homes owned by his neighbor in the park, Roberta Elliot ("Elliot").[1]

---

1. The Court notes that the evidence failed to establish a clear picture of the exact deal between Debtor and Elliot. It is clear that

Elliot had fallen behind on the lot rent on one of the mobile homes, and Defendant, former principal of Sundown Mobile Home Village, Inc., wanted to evict Elliot from the park.

On February 28, 2000, Jax Navy Federal Credit Union ("Jax Navy") drafted a bank check payable to Sundown Mobile Home Village in the amount of $1,919.00. (Pl.Ex. 2.)[2] Debtor transferred these funds to Sundown through Jax Navy in order to pay Elliot's delinquent lot rent. Debtor sought to prevent Elliot's eviction in order to buy Elliot's mobile homes and keep them on their lots in Sundown Mobile Home Village.

Debtor testified that he thought that the check made out to Sundown Mobile Home Village went directly to Defendant personally.

Debtor testified that, on February 28, 2000, he was insolvent because his liabilities exceeded his assets.

For reasons not clear from the evidence, Debtor's purchase of Elliot's mobile home never went through. Elliot never compensated Debtor for his payment of her past due lot rent.

On July 12, 2000, Debtor filed a voluntary petition for Chapter 7 bankruptcy protection. (Doc. 1.)

On December 8, 2000, Plaintiff filed a Complaint seeking to recover under 11 U.S.C. § 550 the $1,919.00 transfer made by Debtor to Sundown Mobile Home Village, Inc. (Adv.Doc. 1.) Plaintiff alleges that the transfer may be recovered because it was constructively fraudulent under 11 U.S.C. § 548(a)(1)(B).

On May 4, 2001, Plaintiff filed the Amended Complaint. Plaintiff substituted

Defendant for Sundown Mobile Home Village, Inc. as party Defendant.

On June 12, 2001, Defendant filed an Answer to the Amended Complaint. (Adv. Doc. 21.) Defendant asserted as affirmative defenses that the Court lacks personal jurisdiction over Defendant and that Plaintiff failed to join an indispensable party to this Proceeding, presumably Sundown Mobile Home Village, Inc. or Roberta Elliot.

At the trial on August 8, 2001, Defendant did not present evidence supporting his procedural defenses, but rather presented evidence contesting the substantive allegations of Plaintiff's Amended Complaint.

## CONCLUSIONS OF LAW

### I. THE CONSTRUCTIVE FRAUDULENT TRANSFER STANDARD: 11 U.S.C. § 548(a)(1)(B)

 Section 548 allows a Chapter 7 trustee to avoid a transfer of a debtor's property if such transfer occurred within one year before the petition date and if the transfer actually or constructively defrauded debtor's creditors. In the event a transfer is avoided under § 548, a trustee may recover the property transferred under 11 U.S.C. § 550. Section 548 provides, in relevant part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

---

Debtor intended to purchase at least one of Elliot's mobile homes.

**2.** Plaintiff attempted to introduce a second $1,919.00 bank check as evidence of an additional transfer from Debtor to Defendant, but failed to properly authenticate the check.

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1) (2001). Section 550 provides, in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made ...

11 U.S.C. § 550(a) (2001).

In order to recover a transfer as constructively fraudulent under § 548(a)(1)(B) and § 550(a)(1), a trustee must prove by a preponderance of the evidence three elements: (1) that the transfer at issue occurred within one year before the date of the filing of the petition; (2) that the debtor was insolvent or near-insolvent at the time of the transfer; and (3) that reasonably equivalent value was not provided to debtor in exchange for the transfer at issue. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn),* 904 F.2d 588, 594 (11th Cir.1990).

The question of whether or not reasonably equivalent value was provided in exchange for a transfer is a question of fact. *See Chase & Sanborn,* 904 F.2d at 593. Generally, a transfer may not be avoided under § 548(a)(1)(B) if it conferred upon a debtor any direct or indirect economic benefit. *See General Electric Credit Corp. of Tennessee v. Murphy (In re Rodriguez),* 895 F.2d 725, 727 (11th Cir. 1990). A transfer may be said to have conferred economic benefit upon a debtor if the transfer secured a future opportunity for economic benefit, whether or not such benefit actually materialized. *See In re Tower Environmental, Inc.,* 260 B.R. 213, 226–227 (Bankr.M.D.Fla.1998). The question of whether or not preservation of an opportunity for economic benefit constitutes "reasonably equivalent" value in exchange for a transfer turns upon three factors: (1) the fair market value of the opportunity compared to the amount of the transfer; (2) the arms-length (or collusive) nature of the transaction; and (3) the good faith (or lack thereof) of the transferee. *See id.*

## II. APPLICATION TO THE INSTANT CASE

The Court finds that Plaintiff failed to prove by a preponderance of the evidence that the $1,919.00 transfer from Debtor to Defendant was constructively fraudulent under § 548(a)(1)(B). Specifically, the Court finds that Plaintiff failed to bring forward sufficient evidence tending to show that Debtor did not receive reasonably equivalent value in exchange for the transfer.

### A. Transfer made within one year before the date of the filing of the petition

The Court finds that Plaintiff proved by a preponderance that the transfer at issue

occurred on February 28, 2000, less than five months before the petition was filed on July 12, 2000.

### B. Insolvency on the date of transfer

The Court finds that Plaintiff proved by a preponderance of the evidence that Debtor was insolvent at the time of the transfer on February 28, 2000. Debtor testified that he was balance-sheet insolvent on February 28, 2000. Defendant did not offer any evidence to contradict that testimony.

### C. Reasonably equivalent value

The Court finds that Plaintiff failed to prove by a preponderance of the evidence that Debtor did not receive reasonably equivalent value in exchange for the $1,919.00 transfer.

First, the Court finds that Defendant provided "value" to Debtor. In exchange for the transfer, Defendant declined to foreclose upon Elliot's lots, thus preserving Debtor's opportunity to purchase Elliot's mobile homes *in situ* and to realize the full economic benefit of his deal with Elliot. Defendant's forbearance constitutes "value" given in exchange for the transfer because it conferred direct economic benefit upon Debtor by securing a future opportunity for Debtor to enhance his net worth and possibly escape from insolvency.

Second, the Court finds that the value given by Defendant was reasonably equivalent to the amount of the transfer. Plaintiff did not present any evidence tending to show that the fair market value of the opportunity to purchase Elliot's mobile home *in situ* was disproportionately small compared to the amount of the transfer. The fact that the deal between Debtor and Elliot eventually fell through does not mean that the opportunity to complete the deal had no value. The possibility of Debtor closing the deal and realizing an eco-nomic benefit was not so farfetched that the preserved opportunity to complete the deal could be called worthless, or even worth less than $1,919.00. Clearly Debtor did not feel that the opportunity was worth less than $1,919.00 when he paid Defendant that amount to keep the deal alive. Additionally, Plaintiff did not present any evidence that the transaction between Debtor and Defendant was collusive, or that Defendant lacked good faith in accepting the transfer from Debtor. In fact, it appears from the evidence that Defendant did not know about the deal between Debtor and Elliot or about Debtor's insolvent financial condition. Defendant simply accepted delinquent lot rent from a source other than the person living on the lot in exchange for forbearance from foreclosure, probably a common transaction in the ordinary course of business of a mobile home village. It would be inequitable for the Court to order Defendant to hand over a transfer he received in the *ordinary course* of business in satisfaction of an apparently legitimate antecedent debt because the transfer was made by a future bankruptcy debtor as part of a doomed deal that Defendant never knew about and would never have gained from.

Therefore, the Court finds that Plaintiff failed to prove an essential element of his case-in-chief, and his attempt to recover the transfer at issue as constructively fraudulent must fail.

### CONCLUSION

The Court finds that Plaintiff failed to bring forward evidence at trial sufficient to carry his burden to show that the transfer at issue was constructively fraudulent. Specifically, the Court finds that Plaintiff failed to prove by a preponderance that Debtor did not receive reasonably equivalent value in exchange for the transfer.

The Court will enter a separate Judgment in accordance with these Findings of Fact and Conclusions of Law.