**In re TROPICAL SPORTSWEAR INT'L CORPORATION, et al., Debtors.**

**No. 8:04–BK–24134–MGW.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 28, 2005.

Denise D. Dell–Powell, Esq., Michael P. Horan, Esq., Erik P. Kimball, Esq., Akerman Senterfitt, Tampa, FL, for Debtors.

Michael J. Sage, Esq., Shannon Lowry Nagle, Esq., Stroock & Stroock & Lavan, LLP, New York, NY, John D. Emmanuel,

Esq., Donald R. Kirk, Esq., Fowler, White, Boggs Banker, P.A., Tampa, FL, for Official Committee of Unsecured Creditors.

Russell S. Bogue, III, Esq., Hunton & Williams LLP, Atlanta, GA, for the CIT Group/Commercial Service, Inc.

Robert B. Glenn, Esq., Glenn, Rasmussen, Fogarty & Hooker, P.A., Tampa, FL, Sarah R. Borders, Esq., Jonathan W. Jordan, Esq., King & Spalding LLP, Atlanta, GA, for SunTrust Bank, as Indenture Trustee.

Brian K. Gart, Esq., Greenberg Traurig, LLP, Fort Lauderdale, FL, for Perry Ellis International, Inc.

Robert A. Soriano, Esq., Carlton Fields, P.A., Tampa, FL, for Critical Vendor Avondale Mills, Inc.

Don M. Stichter, Esq., Scott A. Stichter, Esq., Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Critical Vendors Burlington Worldwide and Galey & Lord, Inc.

Benjamin E. Lambers, Esq., Tampa, FL, Assistant United States Trustee.

### MEMORANDUM DECISION AND ORDER APPROVING PAYMENT OF CRITICAL VENDORS

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

■ "[S]atisfaction of a pre-petition debt in order to keep 'critical' supplies flowing is a use of property other than in the ordinary course of administering an estate in bankruptcy" under section 363(b)(1) of the Bankruptcy Code. *In re Kmart Corporation,* 359 F.3d 866, 872 (7th Cir.2004). However, because payment to certain critical vendors under such circumstances results in disparate treatment of unsecured claims, "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Id.*

■ Accordingly, the Court will exercise its authority pursuant to sections 105 and 363 of the Bankruptcy Code to issue orders providing for the payment of pre-petition amounts to critical vendors only if an evidentiary record establishes that: (i) the payments are necessary to the reorganization process; (ii) a sound business justification exists in that the critical vendor(s) refuse to continue to do business with the debtor absent being afforded critical vendor status; and (iii) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175–77 (Bankr.S.D.N.Y.1989) (A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

Under the facts of this case, the Court is satisfied that a sound business justification exists for the critical vendor payments as permitted by this Memorandum Decision and Order because the critical vendors refuse to do business with the Debtors absent critical vendor status. The Court is also satisfied that the payments to the critical vendors are necessary to the reorganization process because the materials and services supplied by the critical vendors are necessary for the Debtors to maintain their business operations. The Court further finds that the terms of the payments to the critical vendors were negotiated at arms-length, and the Debtors' estates will be improved for the benefit of all creditors—including the disfavored creditors—as a result of this Court's authorization of the payments to the critical vendors as discussed below. Accordingly, the Court will grant critical vendor status

to the critical vendors and permit the payments to the critical vendors subject to the terms and for the reasons set forth below.

*Procedural and Factual Background*

On December 16, 2004, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

This matter came before the Court at a continued final evidentiary hearing held on January 12, 2005, upon Tropical Sportswear Int'l Corporation's and the affiliated debtors-in-possessions' (collectively, the "Debtors") motion to pay three critical domestic vendors (Dkt. No. 52), and an amended motion adding an additional foreign vendor (Dkt. No. 103) (collectively, the "Motion"). The Motion seeks entry of an order under sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, authorizing the Debtors to pay all sums owed as of the Petition Date to four critical vendors. The Official Committee of Unsecured Creditors appointed in these cases (the "Creditors Committee") filed an objection to the Motion on January 11, 2005 (Dkt. No. 111) (the "Objection").

The Debtors design, source, and market high-quality casual and dress-casual trousers, shorts, denim jeans, and woven and knit shirts for men, women and boys. The Debtors market their products through all major apparel retail channels, including department stores, discounters and mass merchants, wholesale clubs, national chains, specialty stores, catalog retailers, and via the internet.

Prior to the institution of these bankruptcy cases, the Debtors conducted business with a variety of vendors, including Galey & Lord; Avondale Mills, Inc.; Burlington Worldwide; and Interamericana Products International/Omega de Exporta-

ciones (the "Critical Vendors"). The Critical Vendors provide the Debtors with certain unique, quality products and services. One of the Critical Vendors is a foreign corporation. The total approximate prepetition amount due to the four Critical Vendors is $6,518,354.50.

Pursuant to the live testimony before this Court on January 7, 2005, and the deposition testimony filed with the Court on January 12, 2005 (Dkt. No. 112) by Mr. George Pita—who is the Chief Financial Officer of the "stalking horse" purchaser, Perry Ellis International, Inc. ("PEI") under an asset purchase agreement with the Debtors (the "APA"), and also through the proffers made by counsel for the Debtors and the Critical Vendors, it is apparent that each of the Critical Vendors provides the Debtors with unique products and services used in the production of pants. The Debtors estimate that it would take approximately four to six weeks to replace the Critical Vendors with alternate suppliers, and interruption in the flow of services and products will substantially jeopardize the Debtors' ability to conduct business. Further, each of the Critical Vendors has informed the Debtors that they will cease production and delivery of new product to the Debtors absent payment of 77.5 percent of their pre-petition accounts receivable due from the Debtors, as well as the retention and payment of any valid reclamation claims.

The Critical Vendors have agreed, however, that they will continue to produce and deliver fabric to the Debtors, perform services, and reinstate normal and customary payment terms with the Debtors with revolving credit limits at varying levels upon payment of the above-stated amounts and the retention and payment of valid reclamation claims. The Critical Vendors have also agreed to waive any claim for the 22.5 percent deficiency for each pre-peti-

tion invoice paid pursuant to this Memorandum Decision and Order other than valid reclamation claims which will be paid in full.

In return, the Debtors agree to waive any claims against the Critical Vendors pursuant to section 547 of the Bankruptcy Code, if any (the "Potential Preferences"). The Creditors Committee conducted a preliminary review of the Potential Preferences and found it probable that the Critical Vendors had defenses to any Potential Preferences. The exact terms of the agreement between the Debtors and the Critical Vendors were reached through arms-length, painstaking, negotiations by and between their respective counsel.

Each of the Critical Vendors supplies unique goods and services to the Debtors, the continued uninterrupted supply of which is absolutely necessary to the maximization of the value of the Debtors' estates for all creditors, including the disfavored creditors. As a result, the entry of this Memorandum Decision and Order granting critical vendor status to the Critical Vendors will benefit all of the Debtors' creditors.

Through the testimony of Mr. Pita and the unrebutted proffers made by counsel for the Debtors, the Court is also aware that the Debtors have executed the APA with PEI providing for the sale of substantially all of the Debtors' assets to PEI for a cash purchase price of approximately $88.5 million. The Debtors intend to implement the sale to PEI (or such other purchaser as is approved by the Court (an "Alternative Purchaser")) through a sale under section 363 of the Bankruptcy Code and have filed these Chapter 11 cases to effect the sale to PEI or an Alternative Purchaser.

Pursuant to the terms of the APA, the Debtors must maintain their businesses. The failure to do so could be deemed a material adverse effect under the APA allowing PEI to terminate same. If the Critical Vendors cease conducting business with the Debtors, it will seriously jeopardize the Debtors' business pending a sale to PEI or an Alternative Purchaser.

*Conclusions of Law*

■ Section 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code. However, the power conferred by section 105(a) is one to implement rather than override the other provisions of the Bankruptcy Code. *See In re Kmart Corporation,* 359 F.3d 866, 871 (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir.1993)).

In this case, the Debtor proposes to utilize section 363(b)(1) as implemented by section 105, to pay the Critical Vendors. Section 363(b) provides that "[t]he trustee [or debtor in possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." As discussed in *Kmart,* "satisfaction of a pre-petition debt in order to keep 'critical' supplies flowing is a use of property other than in the ordinary course of administering an estate in bankruptcy." *Kmart,* 359 F.3d at 872.

The practical justification of allowing payment of critical vendors under section 363 is the recognition that there are instances where vendors not paid for prior deliveries will refuse to make new ones. In such cases, manufacturers (such as the Debtors in this case) that have a critical need for certain products will be unable to continue in business without the continued supply of those products.

In such cases, even the disfavored creditors are better off by paying the critical

vendors since the payments enable a successful reorganization. As suggested in *Kmart*, this is "a use of § 363(b)(1) similar to the theory underlying a plan crammed down the throats of an impaired class of creditors: if the impaired class does at least as well as it would have under a Chapter 7 liquidation, then it has no legitimate objection and cannot block the reorganization." *Kmart*, 359 F.3d at 872–73 (citing *Bank of America v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999)). While the Seventh Circuit in *Kmart* affirmed the reversal of the bankruptcy court order allowing the payments to the "critical vendors," it did so because of the failure of the movant to make any evidentiary showing whatsoever not only that the disfavored creditors will be as well off with reorganization as with liquidation but also that the supposedly critical vendors would have ceased deliveries if old debts were left unpaid while the litigation continued. *Kmart*, 359 F.3d at 873 ("We need not decide whether § 363(b)(1) could support payment of some pre-petition debts, because this order was unsound no matter how one reads § 363(b)(1).").

As stated in *Ionosphere Clubs*, a bankruptcy court's use of its equitable powers to "authorize the payment of Pre–Petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Id.* at 175. It is not uncommon for a bankruptcy court to allow payment to critical vendors pursuant to its equitable powers under sections 105(a) and 363 of the Bankruptcy Code. *See, e.g., In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir.1981); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr.E.D.Va. 1992).

■ This Court finds that a bankruptcy court may utilize sections 105(a) and 363 of the Bankruptcy Code to justify the grant of critical vendor status under appropriate circumstances. Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks. After all, the Bankruptcy Code does not contemplate every business crisis that could arise in a bankruptcy case, and this Court is of the opinion that Congress intended that the Code accommodate the economic realities faced by debtors in reorganization cases.

■ This being said, a bankruptcy court's use of its equitable powers to permit the payment of pre-petition amounts to critical vendors should be exercised only when: (1) those critical vendors are indeed critical and have refused to do business with a debtor absent payment; and (2) only if the court finds that the disfavored creditors will be at least as well off as a result of the court's granting critical vendor status to the select vendors. Through the proper exercise of its equitable powers under sections 105 and 363, permitting a critical vendor to be paid for pre-petition amounts due, a bankruptcy court facilitates the reorganization for the benefit of the debtor's estate and the creditor body as a whole. The result is that a debtor's estate is maximized, and even the disfavored creditors will receive greater payments on their respective claims.

■ This Court finds that the Debtors' situation with its Critical Vendors is precisely the situation where critical vendor status is warranted. Each of the four Critical Vendors is a major supplier of specialty goods or services to the Debtors, and any interruption in the flow of their products to the Debtors would substantially jeopardize the Debtors' ability to conduct business. As such, the Critical Vendors are absolutely critical to the maintenance of the Debtors' estates. Further, due to the slim profit margins

involved in the manufacture of the goods that the Critical Vendors supply to the Debtor, the Court is persuaded that the Critical Vendors' stated refusal to further conduct business with the Debtors absent payments of 77.5 percent of the amount of their pre-petition amounts owing, as well as the retention and payment of any valid reclamation claims, is credible.

In return for this Court's bestowing critical vendor status on the Critical Vendors upon these and other terms as discussed below, the Critical Vendors have agreed to waive any claim for the 22.5 percent deficiency for each pre-petition invoice paid pursuant to this Memorandum Decision and Order, other than valid reclamation claims which will be paid in full. Although the exact discount to the Debtors is yet to be determined (due to the possibility of valid reclamation rights to be credited to the Critical Vendors), this Court finds that the net effect to the Debtors, their estates, the disfavored creditors, and the creditor body as a whole is still positive. The Court also finds that the terms of the Critical Vendor status were negotiated at arms-length by and between the parties, including the Creditors Committee.

It is also apparent to this Court that the APA between the Debtors and PEI would be jeopardized if the Critical Vendors refused to continue to do business with the Debtors. For the above-stated reasons, the Court finds that the Debtors have established sound business justifications for the payments to the Critical Vendors.

Accordingly, it is

ORDERED:

1. The Motion is granted.

2. The Debtors shall pay pre-petition claims of the four Critical Vendors: Galey & Lord; Avondale Mills, Inc.; Burlington Worldwide; and Interamericana Products International/Omega de Exportaciones at the rate of 77.5 cents on each pre-petition dollar of claim as set forth below.

3. The Critical Vendors shall retain their respective rights to assert reclamation claims, subject only to the defense of whether delivery of the goods (as defined in the respective reclamation demands) was within the time period set out in section 546(c)(1) of the Bankruptcy Code for making the respective reclamation demand.

4. Provided that the Debtors comply with the terms of this Order, the Critical Vendors listed below will reinstate normal and customary payment terms as between the Debtors and the relevant Critical Vendors (60 days) with a revolving credit cap at the following levels:

a. Galey & Lord: $3.75 Million;

b. Avondale Mills, Inc.: $1.5 Million; and

c. Burlington Performance: $1.0 Million.

5. All post-petition payments made to the Critical Vendors will be applied first to each Critical Vendor's respective pre-petition invoices, provided, however, that such pre-petition invoices shall be paid at 77.5 percent of the value of the invoice and subject to 60–day terms, with the exceptions that Interamericana Products International/ Omega de Exportaciones shall not be subject to such 60–day terms, and if any payment is already due, payment will be made promptly after entry of this Order. The Critical Vendors waive any claim for the 22.5 percent deficiency for each invoice paid at 77.5 percent pursuant to this Order and shall have no entitlement to any distribution with respect to such deficiency.

6. In the event a Critical Vendor fails or refuses to ship goods to the Debtors post-petition pursuant to the terms of this Order, any amounts paid to the respective

**22**

Critical Vendor(s) for pre-petition invoices pursuant to this Order will be subject to disgorgement or setoff, provided, however, that a Critical Vendor may move this Court for relief from the obligation to ship additional goods based upon a material adverse change in the Debtors' financial condition, and such motion will be heard on an expedited basis. Any pre-petition amounts paid pursuant to this Order that are subsequently disgorged or set off as provided for by this paragraph will be reinstated as part of the respective Critical Vendor(s)' unsecured claim.

7. In the event that the amount paid to any of the Critical Vendors pursuant to this Order exceeds 77.5 percent of the ultimate allowed unsecured claim of the Critical Vendor(s), then the overpayment may be cured through disgorgement by the overpaid Critical Vendor or set off by the estate of the overpayment amount against any amount the Debtors owe to the Critical Vendor(s) for post-petition obligations.

8. Any successful purchaser of the Debtors' assets shall have no obligation to pay or assume a Critical Vendor(s)' administrative claims for payment in connection with goods received or shipped prior to closing and resulting from any rollover of 77.5 percent of the Critical Vendor(s)' claims to post-petition claims.

9. The Debtors, these estates, and the Creditors Committee waive any and all causes of action against the Critical Vendors pursuant to § 547 of the Bankruptcy Code.

DONE and ORDERED in Tampa, Florida, this 28th day of January, 2005.