**In re FULTONVILLE METAL PRODUCTS CO., Pullman–Holt Corp., Debtors.**

**Les Osborne, Liquidating Trustee, Plaintiff,**

v.

**Howell Electric Motors, Defendant.**

**Bankruptcy No. 03–8017–8G1. Adversary No. 8:04–AP–701–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 15, 2005.

Donald R. Kirk, Jr., and Darren D. Farfante, Esquire, Fowler, White, Boggs, Banker, P.A., Tampa, FL, for Plaintiff.

Stephen R. Leslie, Esquire, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT ON COMPLAINT TO AVOID PREFERENTIAL AND FRAUDULENT TRANSFERS

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment on Complaint to Avoid Preferential and Fraudulent Transfers. The Motion was filed by the Defendant, Howell Electric Motors.

Les Osborne, as Liquidating Trustee (the Plaintiff), commenced this action by filing a Complaint to Avoid Preferential and Fraudulent Transfers against the Defendant, Howell Electric Motors (Howell).

Howell acknowledges that it received certain payments from the Debtor, Pullman–Holt Corporation, within ninety days prior to the filing of the Debtor's bankruptcy petition. In its Motion for Summary Judgment, however, Howell contends that the Plaintiff is precluded from recovering the transfers as preferential or fraudulent payments, because the Debtor had requested and obtained an Order treating Howell as a "critical vendor" in the early stages of the case. Howell also contends that the payments are not avoidable as preferential transfers pursuant to the defenses set forth in § 547(c)(2) and § 547(c)(4) of the Bankruptcy Code, and that the payments are not avoidable as constructively fraudulent transfers because the Debtor received "value" in exchange

for the transfers within the meaning of § 548(d)(2)(A) of the Bankruptcy Code.

### Background

Pullman–Holt Corporation, the Debtor, was engaged in the business of manufacturing motorized floor care equipment, such as wet/dry vacuums, carpet extractors, and automatic scrubbers.

Howell supplied the Debtor with the motors and gearboxes installed in its standard floor machines and certain burnishers.

In February of 2003, Howell received Check Number 223425 dated February 26, 2003, from the Debtor in the amount of $39,096.00. (Doc. 11, Admitted or Uncontested Facts, p. 6).

In March of 2003, Howell received Check Number 903146 from the Debtor in the amount of $65,655.52. (Doc. 11, Admitted or Uncontested Facts, p. 6).

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on April 18, 2003.

On May 6, 2003, the Debtor filed a Motion for Order Authorizing Payment of Claim of Critical Vendor (the Critical Vendor Motion). (Doc. 32). In the Critical Vendor Motion, the Debtor requested permission to pay Howell the sum of $38,904.36, which represented the outstanding balance owed to Howell for supplies and services provided prior to the filing of the bankruptcy petition. To support the Critical Vendor Motion, the Debtor alleged that it wished to maintain a "business as usual" atmosphere during its bankruptcy case, and that it "would be unable to maintain an uninterrupted supply of quality goods and services to its customers" unless it paid Howell's prepetition claim.

On May 28, 2003, the Court entered an Order granting the Critical Vendor Motion. (Doc. 72). Pursuant to the Order (the Critical Vendor Order), the Debtor was authorized to pay Howell's prepetition claim in the amount of $38,904.36, subject to the terms set forth in the Order.

On December 18, 2003, the Debtor filed its First Amended Disclosure Statement and First Amended Joint Chapter 11 Plan of Liquidation. (Docs. 445, 446). On January 27, 2004, the Court entered an Order Confirming Debtors' First Amended Joint Chapter 11 Plan of Liquidation. (Doc. 516). Pursuant to the Order Confirming Plan, Les S. Osborne was designated to serve as the Liquidating Trustee for the Trust established under the Plan.

On November 3, 2004, the Plaintiff commenced this action against Howell by filing a Complaint to Avoid Preferential and Fraudulent Transfers and to Recover the Property Transferred or its Value. The Complaint contains two counts. In Count I, the Plaintiff seeks to recover the sum of $104,751.52 from Howell as a preferential transfer pursuant to § 547(b) of the Bankruptcy Code, and in Count II, the Plaintiff seeks to recover the sum of $104,751.52 from Howell as a fraudulent transfer pursuant to § 548(a)(1)(B) of the Bankruptcy Code.

Howell subsequently filed its Answer and Affirmative Defenses to the Complaint, and also filed the Motion for Summary Judgment that is currently under consideration.

In the Motion for Summary Judgment, Howell asserts that there are no genuine issues as to any material fact, and that it is entitled to the entry of a judgment as a matter of law, on seven separate grounds: (1) the "ordinary course of business" defense under § 547(c)(2); (2) the "new value" defense under § 547(c)(4); (3) the doctrine of equitable estoppel; (4) the law of the case doctrine; (5) the doctrine of judicial estoppel; (6) the doctrine of res judi-

cata; and (7) the operation of § 548(d)(2)(A) of the Bankruptcy Code.

## Discussion

This is an action to avoid and recover preferential transfers pursuant to § 547(b) of the Bankruptcy Code and, alternatively, to avoid and recover constructively fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code.

■ Generally, § 547(b) authorizes "the postpetition recovery of a debtor's prepetition transfers that are deemed to be preferential in nature." *In re RDM Sports Group, Inc.,* 250 B.R. 805, 811 (Bankr. N.D.Ga.2000). Pursuant to § 547(b), a trustee may avoid a prepetition transfer of a debtor's interest in property that was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within ninety days before the bankruptcy petition was filed; and (5) that enabled the creditor to receive more than he would have received in a chapter 7 liquidation. *In re RDM Sports Group, Inc.,* 250 B.R. at 811.

■ Likewise, § 548 allows a trustee to avoid a transfer of a debtor's property if the transfer occurred within one year before the bankruptcy petition was filed and if the transfer was actually or constructively fraudulent. To recover a constructively fraudulent transfer under § 548(a)(1)(B), a trustee must prove (1) that the transfer occurred within one year before the petition date; (2) that the debtor was insolvent or nearly insolvent at the time of the transfer; and (3) that the debtor did not receive reasonably equivalent value in exchange for the transfer. *In re McDonald,* 265 B.R. 632, 635–36 (Bankr.M.D.Fla. 2001).

In this case, Howell acknowledges that it received transfers of the Debtor's property within the time periods set forth in § 547(b) and § 548(a)(1)(B) of the Bankruptcy Code. Specifically, the parties agree that "[w]ithin ninety (90) days of the filing of the Petition, the Defendant, Howell Electric Motors, received two checks from Debtor in 2003, i.e., check no. 223425 dated February 26, 2003 for $39,096.00 and check no. 903146 dated March 2003 for $65,655.52." (Doc. 11, Joint Pretrial Statement, Admitted or Uncontested Facts, p. 6).

### A. Section 547(c)(2)

■ Howell first contends that it is entitled to the entry of a judgment in its favor as to Count I of the Complaint to recover preferential transfers, based on the defense set forth in § 547(c)(2) of the Bankruptcy Code. Section 547(c)(2) provides:

**11 U.S.C. § 547. Preferences**

. . . . .

(c) The trustee may not avoid under this section a transfer—

. . . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). The purpose of this defense is to protect normal financial relations between a debtor and its creditors, since such a protection does not violate the general policy of the preference section to discourage unusual payment practices shortly before the bankruptcy case is filed.

*In re Craig Oil Company,* 785 F.2d 1563, 1566 (11th Cir.1986) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 373–74 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6329). To prevail on the defense, one of the matters that a creditor must show is that the payment at issue was consistent with other business transactions between itself and the debtor. *In re Acoustiseal, Inc.,* 318 B.R. 521, 524–25 (Bankr.W.D.Mo.2004).

In this case, Howell relies on a "Customer QuickReport" to show that the challenged payments were made according to the normal course of dealing between Howell and the Debtor. (Doc. 9, Motion for Summary Judgment, Exhibit A). Apart from the payments that were made during the preference period, however, the report identifies only five other payments that were made by the Debtor to Howell, and those payments occurred within a two-month period in 2002.

■ Generally, the defense provided by § 547(c)(2) is not suitable for determination by summary judgment. There is no legal test to determine whether a payment was made in the "ordinary course of business." Instead, the determination depends on an examination of the history of the parties, the timing and amount at issue, and other circumstances surrounding the transaction. *In re Ice Cream Liquidation, Inc.,* 320 B.R. 242, 250–51 (Bankr. D.Conn.2005).

The record in this case is insufficient to determine whether the payments to Howell in February and March of 2003 were made in the ordinary course of the parties' dealings. Howell's Motion for Summary Judgment should be denied to the extent that it seeks a judgment in its favor under § 547(c)(2) of the Bankruptcy Code.

**B. Section 547(c)(4)**

■ Second, Howell contends that it is entitled to the entry of a judgment in its favor as to Count I of the Complaint based on the defense set forth in § 547(c)(4) of the Bankruptcy Code. Section 547(c)(4) provides:

**11 USC § 547. Preferences**

(c) The trustee may not avoid under this section a transfer—

. . . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. §§ 547(c)(4). "The purpose of the 'new value rule' is to encourage creditors to deal with troubled businesses and perhaps prevent a bankruptcy filing." *In re Acoustiseal, Inc.,* 318 B.R. at 525. Generally, to prevail on this defense, a creditor must show that the "new value" provided a material benefit to the debtor. *In re Jet Florida System, Inc.,* 841 F.2d 1082, 1083 (11th Cir.1988).

In this case, Howell contends that the "new value" is established by virtue of the Debtor's allegations in the Critical Vendor Motion. Essentially, the Debtor asserted in the Critical Vendor Motion that the goods supplied by Howell were necessary to maintain an uninterrupted flow of business. The Debtor asserted, for example, that "Howell provides essential goods and services to the products manufactured and distributed by PHC, the loss of which could have a severe impact on PHC's operations." (Doc. 32).

The primary inquiry for purposes of § 547(c)(4), however, is whether the creditor supplied new value, after the challenged payments were received, that actually replenished the estate. *In re Login Bros. Book Company, Inc.*, 294 B.R. 297 (Bankr.N.D.Ill.2003); *In re Pro Page Partners, LLC*, 292 B.R. 622 (Bankr. E.D.Tenn.2003). Although the Debtor's representations in the Critical Vendor Motion support the proposition that Howell's products, if supplied, are valuable to the estate, they do not show that Howell actually provided any goods or services to the Debtor after it received the payments at issue. Further, the representations do not quantify any such "new value," or show the extent to which Howell replenished the Debtor's estate after receipt of the payments in February and March of 2003.

Howell's Motion for Summary Judgment should be denied to the extent that it seeks a judgment in its favor under § 547(c)(4) of the Bankruptcy Code.

## C. The "Critical Vendor" defenses

Third, Howell contends that it is entitled to the entry of a judgment in its favor on both Count I and Count II of the Complaint as a consequence of its Critical Vendor status in this case. Howell asserts that the doctrines of equitable estoppel, law of the case, judicial estoppel, and res judicata apply to the Critical Vendor Motion and the Critical Vendor Order to preclude the Plaintiff from recovering the prepetition payments as preferential or fraudulent transfers.

In the Critical Vendor Motion, the Debtor requested authority to pay Howell's prepetition claim in the amount of $38,904.36, and asserted that payment of the claim was necessary for the Debtor "to maintain an uninterrupted supply of quality goods and services to its customers." (Doc. 32). "Unless PHC [the Debtor] is given the authority to pay the prepetition claim of Howell, PHC's day-to-day operations will be severely disrupted." (Doc. 32, Paragraph 11).

The Court entered an Order Granting the Critical Vendor Motion on May 28, 2003, and the Debtor was authorized to pay Howell's prepetition claim. (Doc. 72).

Howell contends that the Plaintiff "cannot now attempt to get behind the Critical Vendor Motion and Order by attacking alleged prepetition payments made (which, using the logic asserted by the Debtors in its Critical Vendor Motion, would have been equally critical and necessary to the success of the business operations of the Debtors)." (Doc. 7, p. 7). Essentially, Howell contends that the Plaintiff relinquished its right to recover the prepetition transfers when it requested and obtained "Critical Vendor" status for Howell.

 An analysis of Howell's contention begins with the premise that a primary purpose of the Bankruptcy Code is to "ensure the equal treatment of similarly situated creditors." *In re Dupuis*, 265 B.R. 878, 881 (Bankr.N.D.Ohio 2001). "Congress designed the Bankruptcy Code to provide for equal and consistent treatment among similarly situated creditors." *In re Lakeside Community Hospital, Inc.*, 151 B.R. 887, 893 (N.D.Ill.1993) (quoted in *In re Craft*, 321 B.R. 189, 195 n. 10 (Bankr. N.D.Tex.2005)).

 In fact, § 547(b) is specifically designed to implement the overall legislative purpose of providing equal treatment for creditors holding similar prepetition claims. "[T]he avoidance power promotes the 'prime bankruptcy policy of equality of distribution among creditors' by ensuring that all creditors of the same class will receive the same pro rata share of the debtor's estate." *Advo–System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1047 (4th

Cir.1994). "In drafting the preference avoiding provisions of § 547(b), Congress intended both to discourage creditors at the early stages of a debtor's impending collapse 'from racing to the courthouse to dismember the debtor during his slide into bankruptcy,' and also to ensure that similarly-situated creditors are treated equally." *In re Schwinn Bicycle Co.*, 182 B.R. 514, 525 (Bankr.N.D.Ill.1995).

A motion to pay "critical vendors," therefore, is essentially a request for the court to authorize an exception to the general principle favoring equal treatment of similar claims, since the debtor is asking the court for permission to pay some, but not all, of its prepetition unsecured creditors. See *In re CoServ, LLC*, 273 B.R. 487 (Bankr.N.D.Tex.2002).

■ Because the proposed payments involve an exception to such a fundamental bankruptcy principle, it is clear that courts should view requests to pay "critical vendors" with circumspection. "[B]ecause payment to certain critical vendors under such circumstances results in disparate treatment of unsecured claims, 'it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code.' " *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr.M.D.Fla.2005) (quoting *In re Kmart Corporation*, 359 F.3d 866, 872 (7th Cir.2004)). In *Tropical Sportswear*, for example, the Court found that the payment of critical vendors should be approved only upon an evidentiary showing that (1) the payments were necessary to the debtor's reorganization; (2) that a sound business reason justified the payments, in that the vendors would refuse to do business with the debtor absent the payments; and (3) that the disfavored creditors would not be harmed by the pay-

ments. *In re Tropical Sportswear*, 320 B.R. at 17.

■ A request to pay selected prepetition vendors is a clear departure from basic bankruptcy precepts. Consequently, such a request should be carefully scrutinized, and only granted when the circumstances establish that the selected payments are necessary to the reorganization case and will ultimately benefit all creditors of the estate.

■ It follows, therefore, that any rights claimed by a creditor as attendant to its "critical vendor" status should also be viewed with circumspection.

In this case, Howell contends that its court-approved status as a Critical Vendor operates as a complete defense to the Plaintiff's action to recover certain prepetition payments under § 547 and § 548 of the Bankruptcy Code. "The Plaintiff (through its predecessor) procured the Critical Vendor Order, thereby allowing the general unsecured claim of the Defendant and barring any subsequent action under §§ 547 or 548 to recover an alleged preference or fraudulent transfer." (Doc. 7, p. 4).

Neither the Critical Vendor Motion nor the Critical Vendor Order contains any provision regarding the release of Howell from liability under § 547 or § 548.

Nevertheless, Howell contends that it is entitled to the defense based on the doctrines of equitable estoppel, judicial estoppel, law of the case, and res judicata. The Court finds that the record does not support the presence of these defenses as a matter of law. For the reasons set forth below, Howell's Motion for Summary Judgment should be denied to the extent that Howell seeks a judgment in its favor based on its Critical Vendor status.

Under certain circumstances, it may be appropriate to release a supplier from po-

**314**

tential avoidance claims in connection with its status as a Critical Vendor. Because the favored treatment is an inherent departure from basic bankruptcy principles, however, the factual record must clearly justify the grant of such a release.

■ A critical issue, for example, is whether the debtor and the supplier reached an agreement regarding the release of the supplier from preference liability, and whether all other creditors and parties in interest in the case had received notice of the agreement and an opportunity to object. In *In re Phoenix Restaurant Group, Inc.*, 2004 WL 3113719, at *19 (Bankr.M.D.Tenn.), the Court noted the absence of such an agreement in rejecting a creditor's argument that it was insulated from preference liability by virtue of its critical vendor status. "Perhaps, using its unique leverage with the Debtors, Proficient could have bargained for a provision releasing it from preference liability in this bankruptcy case. The Critical Vendor Motion and Order did not do so."

Conversely, in *In re Tropical Sportswear Int'l Corp.*, 320 B.R. at 21–22, the Court approved the debtor's waiver of all avoidance causes of action against the Critical Vendors, but expressly found that "the terms of the Critical Vendor status were negotiated at arms-length by and between the parties, including the Creditors Committee."

■ Additionally, the record must show that all of the vendor's prepetition claims would have been paid in full pursuant to the Critical Vendor Order, if the vendor had not received payment of a portion of its claims prior to the filing of the bankruptcy case. In *In re Zenith Industrial Corporation*, 319 B.R. 810, 814 (Bankr.D.Del.2005), for example, a supplier asserted its "Critical Vendor" status as a defense to a preference action, and the Court found that the defense was legally

insufficient because "it is too speculative to determine that had Longwood not received the preferential transfer pre-petition, it would have been paid pursuant to an essential vendor payment authorization." In other words, the supplier did not establish that the court would have granted the debtor's "Critical Vendor" motion, if the debtor had asked for permission to pay the total amount of the vendor's prepetition claims, including those amounts that were the subject of the preference action. *In re Zenith Industrial*, 319 B.R. at 817.

■ Finally, the specific terms of the Critical Vendor Order must establish that the vendor was insulated from liability for the entire amount of its prepetition transactions with the debtor. The terms of the Order must clearly show, for example, that the protection is intended to cover all of the vendor's prepetition claims, and not just particular claims identified in the motion. As explained by the Court in *In re Hayes Lemmerz International, Inc.*, 313 B.R. 189 (Bankr.D.Del.2004):

> [E]ven if Export had received some payments under the Critical Vendor Order, it does not follow that it was entitled to receive payment of all pre-petition claims.
>
> . . . . .
>
> In granting permission to pay certain discreet [sic] pre-petition payments after the bankruptcy filing to keep the debtor's business operating, the court is *not* granting a complete waiver of any preference actions.

*In re Hayes Lemmerz*, 313 B.R. at 193–94 (Emphasis in original). If the terms of a supplier's Critical Vendor status include insulation from preference liability, the protection must expressly appear in the Critical Vendor Order. *In re Phoenix Restaurant*, 2004 WL 3113719, at *18–19.

In the Critical Vendor Motion in this case, the Debtor requested authorization to pay Howell's prepetition claim, and specifically stated that the "total aggregate amount of the payment for which the Debtors request authority herein shall not exceed $38,904.36." (Doc. 32). The Critical Vendor Order provides that the Debtor is "authorized to pay Howell its prepetition claim in the amount of $38,904.36 subject to the terms set forth below." (Doc. 72). The "terms" contained in the Order involve Howell's agreement to continue to supply goods and services to the Debtor during the chapter 11 case.

The Motion and Order do not refer to the allegedly preferential payments that were made to Howell before the bankruptcy petition was filed. There is no indication that the Debtor and Howell engaged in any negotiations regarding the prepetition payments, or that they even considered the payments at the time that the Motion was filed. Further, there is no indication that the Debtor conducted any sort of preference analysis in connection with the Motion, or that the parties exchanged any waivers or releases at the time that the Critical Vendor Order was entered. *In re Hayes Lemmerz,* 313 B.R. at 194; *In re Phoenix Restaurant,* 2004 WL 3113719, at *19.

On the contrary, the Debtor requested permission to pay Howell a discrete amount ($38,904.36) as a favored claim, and the Order simply authorizes payment of that specific amount, on the condition that Howell provide "a written statement in which it covenants to provide products to PHC [the Debtor]" throughout the chapter 11 case in accordance with their agreed business terms.

Finally, it is significant in this case that the amount of the payment authorized in the Critical Vendor Order is $38,904.36. The amount of the payments made to Howell within ninety days prior to the filing of the bankruptcy petition, however, totals $104,751.52. If the prepetition transfers had not been made, therefore, the aggregate amount of Howell's prepetition claim would have been $143,655.88. Based on the record, the Court cannot conclude that the Critical Vendor Motion would have been granted if the Debtor had requested authority to pay Howell the sum of $143,655.88 as a favored unsecured claim, instead of only $38,904.36. *In re Zenith Industrial,* 319 B.R. at 814, 817. Consequently, the Court cannot conclude that Howell is entitled to protection for the entire amount of its prepetition debt by virtue of its Critical Vendor status. The record does not establish that the Court would have approved the favored treatment for an amount that is more than three times the amount actually requested and authorized.

Howell's Motion for Summary Judgment should be denied to the extent that it seeks a judgment in its favor as to both Counts of the Complaint. The record does not demonstrate that Howell's Critical Vendor status operates as a complete defense, as a matter of law, to this avoidance action. Further, the record does not show that the particular circumstances surrounding the entry of the Critical Vendor Order justify the availability of the defense.

**D. Section 548(d)(2)(A)**

Finally, Howell contends that it is entitled to the entry of a judgment in its favor as to Count II of the Complaint to recover constructively fraudulent transfers, based on the definition of "value" set forth in § 548(d)(2)(A) of the Bankruptcy Code.

As set forth above, to recover a constructively fraudulent transfer under § 548(a)(1)(B), a trustee must prove (among other elements) that the debtor

did not receive reasonably equivalent value in exchange for the transfer. The term "value" is defined in § 548(d)(2)(A) as follows:

**11 USC § 548. Fraudulent transfers and obligations**

. . . . .

(d)(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

11 U.S.C. § 548(d)(2)(A).

Howell apparently asserts that the transfers that it received prior to the filing of the bankruptcy petition constituted payment of invoices that it had previously issued to the Debtor, and therefore resulted in the satisfaction of a present or antecedent debt. Consequently, Howell asserts that the Debtor received "value" in exchange for the transfers within the meaning of § 548(d)(2)(A), so that the Plaintiff cannot establish a primary element of his cause of action under § 548(a)(1)(B).

Howell and the Plaintiff have stipulated that Howell received Check Number 223425 dated February 26, 2003, in the amount of $39,096.00, and Check Number 903146 dated March 26, 2003, in the amount of $65,655.52, within ninety days prior to the filing of the bankruptcy petition.

The "Customer QuickReport" attached as Exhibit A to Howell's Motion for Summary Judgment is the only documentation in the record to support Howell's contention that the checks constituted payment of a present or antecedent debt.

Material questions of fact exist, however, with respect to whether the two checks at issue represent payment of the invoices identified in the Report. Check Number 223425 appears in the Report, and appears to represent payment of two invoices dated November 6 and November 18, respectively. Check Number 903146, however, does not appear on the Report. Instead, the Report appears to indicate that the invoices that were issued after November 18, 2002, were paid by wire transfer, and not by check. Further, the five invoices issued after November 18, 2002, do not add up to $65,655.52, the amount of Check Number 903146.

Accordingly, the Court cannot conclude from the record that the checks that are the subject of this avoidance action represented the payment of any specific invoice, or that the checks constituted payment of any specific antecedent debt. Factual issues exist in this case that preclude the entry of a summary judgment.

Howell's Motion for Summary Judgment should be denied to the extent that it seeks the entry of a judgment in Howell's favor on the basis of § 548(d)(2)(A) of the Bankruptcy Code.

**Conclusion**

This is an action to recover preferential transfers under § 547(b) of the Bankruptcy Code or, alternatively, to recover constructively fraudulent transfers under § 548(a)(1)(B) of the Bankruptcy Code. Howell, the defendant, asserts that a summary judgment should be entered in its favor on seven separate grounds. Howell's Motion for Summary Judgment should be denied.

First, Howell is not entitled to a summary judgment based on the defenses set forth in § 547(c)(2) and § 547(c)(4) of the Bankruptcy Code, because the record is insufficient to establish whether the transfers were made in the "ordinary course of business," or whether the Debtor received "new value" in exchange for the transfers.

Second, Howell is not entitled to a summary judgment based on its Critical Vendor status, because the record does not

show that (1) Howell was released from avoidance liability as part of a negotiated agreement, or that (2) all of Howell's prepetition claims would have been paid pursuant to the Critical Vendor Motion and Order, if the transfers had not been made, or that (3) the Critical Vendor Order was intended to protect all of Howell's prepetition claims, and not just the specific claims identified in the Motion.

Finally, Howell is not entitled to a summary judgment on Count II of the Complaint, because the record does not establish that the transfers constituted satisfaction of a present or antecedent debt within the meaning of § 548(d)(2)(A) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Summary Judgment on Complaint to Avoid Preferential and Fraudulent Transfers, filed by Howell Electric Motors, is denied.

2. A continued Pretrial hearing will be scheduled by separate Order.